THE CITY OF POUGHKEEPSIE, PLAINTIFF, *v.* WILLIAM I. QUINTARD, DEFENDANT.

*Municipal corporations — prohibition against incurring debt — right to issue new bonds to retire old ones maturing — it does not create a new debt.*

The charter of the city of Poughkeepsie prohibited it from borrowing money, except that it might incur an obligation which was to be paid in the current year from income, but by a special act it was empowered to issue bonds for the purpose of procuring a water supply. By a subsequent amendment to the charter the water bonds were made a part of the city debt, and the subject of the water supply was brought under the restrictions of the charter, which, in addition to the above restrictions, provided that money should be raised by tax to pay the installments of the debt as it matured.

Chapter 75 of the Laws of 1878, as amended, authorized a city, whenever any of its bonds matured, or in anticipation thereof, to issue and sell new bonds at a rate of interest not exceeding six per cent, and also at less than the rate of the bonds becoming due, in order to retire such bonds.

Under this latter act the city, for the purpose of retiring certain water bonds, issued new bonds, some of which were bid for by William J. Quintard, who refused

to complete his purchase because the charter, as he alleged, forbade the city to incur the debt:

*Held*, that, under chapter 75 of the Laws of 1878, and particularly under its amendment by chapter 526 of the Laws of 1889, the city had a right to exchange a new bond for an old one maturing.

That such an exchange could not be said to create a new debt or obligation, because the money derived from the new bond was to be applied to the payment of the old one.  (CULLEN, J., dissenting.)

SUBMISSION of a controversy between the City of Poughkeepsie, as plaintiff, and William I. Quintard, as defendant, without action, upon an agreed statement of facts.

The question presented was as to the authority of the city of Poughkeepsie to issue new bonds to retire old bonds of the city water debt which were maturing.  The plaintiff bid for $19,000 of the new bonds, but being advised that the bonds were illegally issued, refused to pay for them.

*C. B. Herrick*, for the plaintiff.

*Clark & Sedgwick*, for the defendant.

BARNARD, P. J.:

The right to exchange a new bond of the city for an old one maturing is given plainly by chapter 526, Laws of 1889, and the laws amended thereby.  The act of 1889 went farther than the preceding acts; in that legislature permission was given to sell new bonds under very guarded conditions, and to pay the old ones with the proceeds of the new.  Neither the direct exchange or the issue of the new bonds constitutes a creation of a liability under the city charter.  Neither creates a new debt or obligation.  As to the exchange it is very plain that a substitution of one bond for another created no new liability.  The application of money derived from a new bond to the payment of the old is the same thing in the spirit of the act permitting cities to meet maturing loans by an exchange or sale of new bonds.

Judgment for plaintiff upon submitted case, with costs

DYKMAN, J., concurred.

CULLEN, J. (dissenting):

This is a controversy without action, submitted under the Code. The sole question involved is the power of the plaintiff to issue

bonds, the proceeds of which are to be applied to the payment of water bonds maturing this year.

Chapter 75, Laws of 1878, as amended by Laws of 1878, chapter 317; Laws of 1884, chapter 244; Laws of 1887, chapter 282, and Laws of 1889, chapter 526, authorizes any village, city, town or county whenever any of its bonds mature, or in anticipation thereof, to issue and sell new bonds at a rate of interest not exceeding six per cent, and also less than the rate of the bonds becoming due, to retire such bonds.

The contingency on which the plaintiff has assumed to issue the bonds in controvery is exactly the one contemplated by this statute, and it is not denied that the plaintiff would have the necessary power to issue the bonds except for the restricted provisions of the city charter.

The charter provision on this subject now stands (Laws of 1883, chap. 523) as follows:

Section 125. "The common council shall not have power to borrow, and is hereby expressly prohibited from borrowing any money on account of the city, except as herein provided. The said council shall not create any pecuniary obligations whatever on the part of the city which shall not be payable in the current year, and which cannot be discharged from the income of the same year."

This provision has been in the charter, substantially, in the same form since the incorporation of the city in 1854. The object for which the maturing bonds were originally issued was not authorized by the charter or its amendments. It was by a special act (chap. 333, Laws of 1867) that the city was empowered to acquire a water supply and to issue bonds therefor. But by the act of 1883 the water supply was brought under the charter provisions and under the charter restrictions. It is to be observed that while power is given by this act to the water commissioners, constituted thereby, to acquire on behalf of the city lands and water, the authority to create debt therefor given by the original act is omitted. At the same time the debt theretofore contracted on this account is incorporated into the general debt of the city, because by section 223 the five per cent on the amount of water stock levied annually as a tax is to be placed in the public debt fund. Therefore, after the amended charter of 1883, the water debt stood on the same footing

and was subject to the same provisions of law as the other debts of the city.

The question then arises whether the act of 1878 shall prevail over the charter provision governing the city of Poughkeepsie. Admitting that the amendments to that act subsequent to 1883 make it the later statute on the subject, still the rule is, that a general act will not be construed to repeal or amend a prior special act unless such intention is manifest. (*Matter of the Evergreens*, 47 N. Y., 216; *Matter of Central Park*, 50 id., 497; *Buffalo Cemetery* v. *Buffalo*, 118 id., 61.)

It is contended, however, on behalf of the plaintiff, that the provision of the charter cited is no more than a statutory expression of the general rule of law, that municipal corporations cannot borrow money without authority. We think the language used is too broad and comprehensive to be thus limited. But this is not the only charter provision on the subject. By section 93 it is made the duty of a common council to levy annually a tax sufficient to meet any installments of public debt maturing. It was thus not only directed that no debt should be incurred except as provided for in the charter, but also that all debt should be paid as it matured. To construe the act of 1878 as authorizing the plaintiff to issue these bonds would obliterate both these charter provisions. This, we think, the well settled rules of statutory construction will not permit. It was the duty of the common council to raise the amount necessary to pay the maturing bonds by tax.

We think that the bonds are not authorized by law, and there should be judgment for the defendant on submitted case, with costs.

Judgment for plaintiff on submitted case, with costs.