112  319
114  140
112  319
117  363
112  319
126  184

[S. F. No. 176.    In Bank.—April 9, 1896.]

# THE CITY OF LOS ANGELES, Petitioner, v. FREEMAN G. TEED, Respondent.

MUNICIPAL CORPORATIONS—FUNDING OF CITY INDEBTEDNESS—ORDINANCE —NOTICE OF ELECTIONS. — Assuming an election to be necessary to warrant the funding of the indebtedness of a city, an ordinance calling an election of the qualified voters of the city to be held on a day therein named, more than ten days subsequent to the date of the ordinance, and prescribing the manner of conducting the election, naming the precincts, polling-places, and officers of election, and providing that if two-thirds of the electors voting should vote in favor of the issuing ·of bonds to a specified amount to fund the indebtedness of the city, and specifying the character and terms of the bonds to be issued, gives of itself sufficient notice of the election; and the fact that the ordinance was not published for a full period of ten days before the election, and that it was " to take effect and be in force" only at the expiration of the ten days' publication, did not lessen its effect as a notice; and the contention that ten days' notice of the election was not given, as required by law, cannot be sustained.

ID.—CONSTRUCTION OF CODE—APPLICABILITY OF FUNDING PROVISIONS.—Sections 4445 to 4449 of the Political Code as enacted in 1880, and amended in 1881, authorizing "the board of trustees or municipal council of any city having an outstanding indebtedness on the first day of January, 1880, evidenced by bonds or warrants thereof," to fund or refund the same by a two-thirds vote of such board or council, are applicable to all cities having such outstanding indebtedness, though organized prior to the adoption of the code; and those sections provide the methods to be pursued in funding or refunding any indebtedness of any city which was outstanding on the 1st of January, 1880.

ID.—JUDICIAL NOTICE — ORGANIZATION OF MUNICIPAL INCORPORATIONS.— The courts are bound to take judicial notice of the fact that no city was ever organized under the code.

ID. — PRESUMPTION — KNOWLEDGE OF LEGISLATURE — EFFECTIVENESS OF STATUTE.—An act of the legislature being essential to the organization of a municipal corporation, it must be presumed that the legislature, when enacting sections 4445 to 4449 of the Political Code, was aware that no city had been organized under the code; and as it cannot be supposed that the legislature intended to pass an act which could not have any effect whatever, if not applicable to cities organized prior to the code, it must be held to have intended to make those sections so applicable, in order to give them effect.

ID. — CONSTITUTIONAL LAW — CREATION OF INDEBTEDNESS—ASSENT OF VOTERS—FUNDING DEBT CREATED PRIOR TO CONSTITUTION—CHANGE OF EVIDENCE OF DEBT.—Sections 4445 to 4449 of the Political Code, in providing for the issuance of bonds for the funding of the indebtedness of cities having an outstanding indebtedness on the 1st of January, 1880, by a vote of two-thirds of the members of the city council, without submission

of the matter to the vote of the people, provide only for a mere change in the form of the evidence of indebtedness and not for the creation or incurring of a new indebtedness or liability, within the meaning of section 18 of article XI of the constitution, which forbids any city to "incur any indebtedness or liability in any manner, or for any purpose, exceeding in any year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for such purpose"; and, as those sections of the Political Code relate only to indebtedness incurred prior to the taking effect of the present constitution, they are not in conflict with its provisions, and the assent of the electors is not required to authorize the refunding.

ID.—DATE OF OUTSTANDING INDEBTEDNESS—PLEADING—PRESUMPTION.— In pleading the refunding of the indebtedness of a city which was outstanding on the 1st of January, 1880, it is necessary to aver what indebtedness was then outstanding, and it cannot be presumed in favor of the pleader that any indebtedness was then outstanding, if it is not alleged.

ID. — CONSTITUTIONAL LAW — SPECIAL LEGISLATION — CLASSIFICATION OF MUNICIPAL CORPORATIONS — FUNDING INDEBTEDNESS OF CLASSES OF CITIES.—The act of March 15, 1883, and the act of March 1, 1893, amendatory thereof, in reference to the funding or refunding of any indebtedness of municipal corporations other than cities of the first class, are within the power of the legislature with respect to the classification of municipal corporations, and to make different regulations in matters pertaining to municipal organizations, and do not violate the provisions of the constitution against special legislation.

ID.—FUNDING INDEBTEDNESS CREATED UNDER CONSTITUTION—ASSENT OF VOTERS—STATUTORY CONSTRUCTION.—Under any act providing for the funding of municipal indebtedness incurred since the taking effect of the present constitution, a submission to the voters must be had to determine the question whether bonds shall be issued; but it does not follow that an act on that subject must contain that requirement; and it is sufficient that by any legislation, or by the terms of a municipal charter, authority is given to the municipal government to call such an election; and it seems that the constitutional provision requiring such an election is, of itself, sufficient authority to the municipality for holding it.

ID.—INVALID PROVISION—PAYMENT OF BONDS OUT OF STATE—MANDAMUS. A statute or ordinance providing that municipal bonds for the funding of city indebtedness shall be made payable outside of the state, at a bank in New York city, or at any place other than the city treasury, contravenes sections 15 and 16 of article XI of the constitution, and is invalid; and the president of the city council cannot be compelled by *mandamus* to sign bonds made so payable.

APPLICATION in the Supreme Court for a writ of mandate to the president of the City Council of Los Angeles.

The facts are stated in the opinion of the court.

*W. E. Dunn, Charles H. McFarland, Albert Crutcher,* and *E. A. Meserve,* for Petitioner.

There has always been a distinction drawn as to the manner in which cities of the first class and other cities shall refund their debt. (Pol. Code, sec. 4445.) The act of March 27, 1895, is unconstitutional, because it provides for the incurring by a municipality of an indebtedness and liability exceeding in one year the revenue provided for that year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose (Const., art. XI, sec. 18; *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641, 642; *Shaw* v. *Statler,* 74 Cal. 259; *Schwartz* v. *Wilson,* 75 Cal. 502; *Mayrhofer* v. *Board of Education,* 89 Cal. 110; 23 Am. St. Rep. 451), and because it is an *ex post facto* law impairing the obligations of contracts (U. S. Const., art. I, sec. 10; Const., art. I, sec. 16; *People* v. *Wood,* 7 Cal. 579; *Robinson* v. *Magee,* 9 Cal. 81; 70 Am. Dec. 638; *People* v. *Bond,* 10 Cal. 570; *Babcock* v. *Middleton,* 20 Cal. 644; *Floyd* v. *Blanding,* 54 Cal. 41; *Fletcher* v. *Peck,* 6 Cranch, 137; *Grogan* v. *San Francisco,* 18 Cal. 590); also because it grants special privileges to certain citizens, and to a class of citizens, which are not equally granted to all citizens (Const., art. I, sec. 21, art. IV, sec. 25; *People* v. *Henshaw,* 76 Cal. 436; *Pasadena* v. *Stimson,* 91 Cal. 238); also because it is against public policy. (3 Am. & Eng. Ency. of Law, 674.) The act of March 15, 1883, is not unconstitutional, as the issuing of refunding bonds to retire outstanding bonds is not the creation of a new liability, but is simply the renewal of the old debt in a different form. (*Poughkeepsie* v. *Quintard,* 19 N. Y. Supp. 944; 65 Hun, 141; *Hotchkiss* v. *Marion,* 12 Mont. 218; *Brown* v. *Milliken,* 42 Kan. 769; *Mayor etc. of Baltimore* v. *State,* 15 Md. 376; 74 Am. Dec. 572.) The act of March 1, 1893, is not special legislation, as it applies to every city except cities of the first class, and as the constitution makes a distinction between cities of the first class and all other

classes, it is not inconsistent that the legislature should make provision for all cities other than the first class, and let that class stand by itself (Const., art. XI, secs. 6, 7; *People* v. *Henshaw, supra; Cody* v. *Murphey,* 89 Cal. 522; *Farnum* v. *Warner,* 104 Cal. 677; *Young* v. *Commissioners of Tipton County,* 137 Ind. 323; *State* v. *Butts,* 31 Kan. 537; *Van Riper* v. *Parsons,* 40 N. J. L. 123; 29 Am. Rep. 210; *Wheeler* v. *Philadelphia,* 77 Pa. St. 338; *Knickerbocker* v. *People,* 102 Ill. 218; *Aya's Appeal,* 122 Pa. St. 266; *State* v. *Hammer,* 42 N. J. L. 439; *University of California* v. *Bernard,* 57 Cal. 612; *Thomason* v. *Ashworth,* 73 Cal. 73; *Ex parte Henshaw,* 73 Cal. 486; *Ex parte Ah You,* 82 Cal. 342; *Ex parte Halsted,* 89 Cal. 471; *Welsh* v. *Bramlet,* 98 Cal. 219; *Darcy* v. *Mayor etc. of San Jose,* 104 Cal. 642; *Bruch* v. *Colombet,* 104 Cal. 347.)

*J. S. Chapman,* for Respondent.

The acts of 1883, 1893, and 1895 are all unconstitutional, because they except cities of the first class, and are special and local legislation. (*Pasadena* v. *Stimson,* 91 Cal. 238; *Dougherty* v. *Austin,* 94 Cal. 601; *Santa Cruz* v. *Enright,* 95 Cal. 105.) The issuing of funding bonds is not the creation or contracting of a new debt or liability, but a mere renewal of the old. (*Hotchkiss* v. *Marion,* 12 Mont. 218; *Brown* v. *Milliken,* 42 Kan. 769; *Poughkeepsie* v. *Quintard,* 19 N. Y. Supp. 944; 65 Hun, 141; dissenting opinion in *Doon Tp.* v. *Cummins,* 142 U. S. 379; *Sherman County* v. *Simons,* 109 U. S. 739; *Miller* v. *Kister,* 68 Cal. 145; *Santa Cruz etc. Co.* v. *Kron,* 74 Cal. 222; *Sower* v. *Philadelphia,* 35 Pa. St. 231; 1 Dillon on Municipal Corporations, secs. 307, 309, note; *In re Guerrero,* 69 Cal. 90–3; Stats. 1889, pp. 503–05; Stats. 1878, pp. 672, 673.)

*Francis J. Thomas, amicus curiæ,* for Respondent.

The refunding of the liabilities, and postponing the date of payment to May 1, 1935, which would exceed forty years from the time of contracting the same, is

contrary to both the original and amended provision of the constitution.    (Const., art. XI, sec. 18; Stats. 1891, p. 523.)

Van Fleet, J.—This is an original application to this court for a writ of mandate to require the defendant, as president of the council of the city of Los Angeles, to sign certain bonds alleged to have been authorized by said council and the voters of the city.   The defendant demurs to the petition, on the grounds that the acts of the legislature under which the bonds are attempted to be issued are unconstitutional, that the same have been repealed, and that the proceedings prescribed by law for the issuance of the bonds have not been taken by the council.

The case has not been as fully argued as its importance requires; and some points, absolutely indispensable to a decision, have not been at all referred to by counsel.   This is especially to be regretted, as the questions involved are of great public importance, which we ought not to be asked to examine without the fullest assistance from counsel.   We have, nevertheless, given the matter careful consideration, and are of opinion that the demurrer must be sustained.

The facts alleged in the petition as amended are, in substance, these:

On February 26, 1895, the city of Los Angeles had outstanding certain bonded indebtedness amounting to three hundred and ninety-six thousand dollars, of which seventy-six thousand dollars would become due August 1, 1895, and the remainder was payable at any time at the option of the city.   It does not appear distinctly when any of these bonds were issued, nor when any of the indebtedness thereby represented was incurred.   No sinking or other fund sufficient to pay the bonds has been provided, and the amount necessary to pay or refund them is too large to be paid from the ordinary annual income or revenue of the city.   The total indebtedness of the city is less than two million dollars.

On February 26, 1895, the city council adopted an ordinance calling an election of the qualified voters of the city, to be held on a day therein named, at which was to be submitted the question whether or not refunding bonds, to the amount of three hundred and ninety-six thousand dollars, should be issued. The ordinance provided that, in case two-thirds of the qualified electors voting should vote in favor of the issuing of said bonds, the same should be issued. The bonds were to be serial in character, one-fortieth of the whole amount to be paid each year, bearing interest at four and one-half per cent per annum (which was less than the rate borne by the outstanding bonds), and payable at the Chemical National Bank, in the city of New York. A sinking fund was, by the terms of the ordinance, provided for the payment of the principal and interest. The ordinance prescribed the manner of conducting the election, and named the voting precincts, polling places, and officers of election. It concluded as follows: "The city clerk shall certify to the passage of this ordinance, and cause the same to be published for ten days in the Los Angeles *Evening Express*, and thereupon and thereafter it shall take effect and be in force."

The ordinance was accordingly published for ten days; but, as the day fixed for the election was only sixteen days from the approval of the ordinance, the last publication was less than ten days before the election.

The election was held, and much more than two-thirds of the qualified electors voting thereat voted in favor of issuing the proposed bonds. Thereupon a further ordinance was adopted, directing the issue of the bonds, and requiring the same to be signed by the president of the city council, who is the defendant here. The defendant refused to sign the bonds.

It is further alleged that none of the holders of the outstanding bonds have refused to exchange the bonds held by them, nor have any of them deposited any of their bonds with any depositary for redemption, and the

city has made no effort to exchange the proposed refunding bonds for the outstanding bonds.

Assuming an election by the voters to be necessary, the defendant contends that the ten days' notice of the election was not given as required by law.   We do not think this objection well taken.   The ordinance was, in terms, a notice of the election, containing everything necessary for such notice.   The fact that it was to "take effect and be in force" only at the expiration of the ten days' publication did not lessen its effect as a notice.   The manifest intention of the council was that the election should take place on the day named; and the language referred to, though not aptly chosen for the purpose, does not obscure that intention.   It is sufficient that notice was given, and that at the time appointed for the election there was an ordinance in force authorizing it.

But the really serious questions to be determined are as to what statute governs the case, and as to the effect of the provisions of the constitution on the subject.

The first legislation on the subject is contained in sections 4445 to 4449 of the Political Code, enacted in 1880 and amended in 1881.   Those sections authorized "the board of trustees or municipal council of any city having an outstanding indebtedness on the first day of January, 1880, evidenced by bonds or warrants thereof," to fund or refund the same by a two-thirds vote of the members of such board or council.   The effect of these sections has not been discussed by counsel, it being apparently assumed on both sides that under the decision in *Ex parte Simpson*, 47 Cal. 127, these sections are not applicable to cities organized before the adoption of the codes.   But we think that the rule laid down in that case does not apply to these sections, and that they are applicable to all cities.   It is true that they are a part of title III of part IV of the Political Code, and that it was held in that case that none of the sections of that title were applicable to any existing city.   But the sections now in question were added to the code long after that decision, and it is manifest, from their terms, that they

were intended to apply to all cities, without exception. The officers therein mentioned are given designations not corresponding to those used in the "system or plan under which cities may," under the preceding sections, "be organized and governed." They are designated by general terms, studiously chosen so as to include cities of diverse forms of government, and organized in a manner different from that provided for in the preceding sections of the title. The language so used unmistakably negatives any intention to confine the operation of those sections to cities organized under the code.

But, beyond this, these sections can have no effect whatever, unless they apply to cities formed before the adoption of the code. These provisions relate only to cities having an outstanding indebtedness on January 1, 1880. We are bound to take judicial notice of the fact that no city was ever organized under the code; and, as no such organization could take place except by act of the legislature (Pol. Code, sec. 4356), we presume that the legislature was aware, when it enacted the sections in question, that no such organization had been had. We cannot suppose that the legislature intended to pass an act which never could have any effect whatever; and we must therefore hold that these sections apply to all cities, without exception.

The argument of counsel as to certain other statutes (to be presently referred to) raises the question whether these sections are not in conflict with section 18 of article XI of the constitution, which forbids any city to "incur any indebtedness or liability in any manner, or for any purpose, exceeding in any year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose." But we do not think there is any such conflict. It is true that the sections in question do not provide for obtaining the assent of the voters, but no such assent was necessary. The only indebtedness authorized by these provisions to be funded or refunded is such as existed prior to the

time when the constitutional provision in question took effect; and merely to fund or refund an existing debt is not to "incur an indebtedness or liability." A bond is not an indebtedness or liability—it is only the evidence or representative of an indebtedness; and a mere change in the form of the *evidence* of indebtedness is not the creation of a new indebtedness within the meaning of the constitution. (Opinion of Judges, 81 Me. 602; *Hotchkiss* v. *Marion*, 12 Mont. 218; *Commissioners of Marion County* v. *Commissioners etc.*, 26 Kan. 181, 201; *Poughkeepsie* v. *Quintard*, 65 Hun, 141.) The case of *Doon Tp.* v. *Cummins*, 142 U. S. 366, appears to be opposed to this view; but we are unable to assent to the reasoning of the majority of the court in that case, and think that the correct rule is stated in the dissenting opinion. Moreover, the state had no more power, by adopting a constitution, to impair the obligation of the contracts by which cities had previously incurred indebtedness than it had to impair it by a mere statute. It is true that to take away a remedy previously allowed does not always impair the obligation of a contract. But a reasonably efficient remedy must be left; and, in a majority of cases, the only way in which municipalities can pay their debts is by issuing funded bonds. Even then, if the state had power to forbid the funding of a prior indebtedness, except upon new and perhaps impossible conditions (a concession which we are not prepared to make), it certainly will not be presumed, in the absence of a clear and explicit declaration to that effect, that the framers of our state constitution intended such a result. The clause in question does not necessarily require such an interpretation; and we are of opinion that it does not apply to the funding of any then existing indebtedness.

It follows that, as to any indebtedness of the city of Los Angeles outstanding on the first day of January, 1880, sections 4445 to 4449 of the Political Code provide the method to be pursued in funding or refunding the same. The petition in the present case, however, does

not allege that any of the indebtedness in question was outstanding on that day; and we cannot presume, in favor of the pleader, that such was the fact. It is, therefore, necessary to inquire whether the bonds in question are authorized by any other statute.

On March 15, 1883, an act was passed (Stats. 1883, p. 370) authorizing the governing body of every municipal corporation, other than cities of the first class, to fund or refund *any* indebtedness of the corporation by a vote of four-fifths of their number. That act authorized the issue of bonds, to be exchanged for any existing indebtedness, or to be sold for money to be applied to the payment of such indebtedness.

It is contended that this act violates the provisions of the constitution against special legislation. But there can be no question that the act classifying municipal corporations is constitutional (*Prichett* v. *Stanislaus County*, 73 Cal. 310), and that in matters pertaining to municipal organization the legislature may make different regulations for the different classes so created (*Pasadena* v. *Stimson*, 91 Cal. 249.) The subject matter of the act in question—the funding of municipal indebtedness—is "peculiarly a matter pertaining to municipal organizations, and still more peculiarly a matter as to which cities of large population require different provision from that suitable to cities or towns of small population." The act is, therefore, not obnoxious to that objection.

It is also contended that the act is unconstitutional in failing to provide for submitting to voters the question whether the bonds shall be issued. It is true that as to any new indebtedness incurred after January 1, 1880, such a submission must be had; but it does not necessarily follow that any act of the legislature on that subject must contain that requirement. It is, we think, sufficient that, by any legislation, authority is given to the municipal government to call such an election, and that the election is actually called and held. Such authority is expressly given by sections 40, 197, 198,

199, and 200 of the charter of Los Angeles (Stats. 1889, p. 455), and, as we have seen, a valid election was actually called and held in this case. Indeed, it is probable that the constitutional provision requiring such election is, of itself, sufficient authority to the municipality for holding it—at least when read in connection with such an act as the one of 1883 here in question.

On March 1, 1893, an act was passed (Stats. 1893, p. 59) amending the act of 1883. By this amendment a submission to the voters was required in all cases, one-fortieth (instead of one-twentieth) of the principal was required to be paid each year, and authority was given to make the bonds payable either at the office of the city treasurer, or at a bank in San Francisco, New York, Boston, or Chicago.

It is contended that this act also is invalid, as special legislation; but what we have said as to the act of 1883 on this question applies equally to this act. It is also claimed that the legislature could not authorize a debt payable in twenty years to be refunded into a debt payable in forty years; but we fail to discover any force in this contention, and no reason is suggested or authority referred to supporting it.

It is also contended that the provision authorizing payment of the bonds at a place other than the city treasury, and especially out of the state, is in contravention of sections 13 and 16 of article XI of the constitution, and therefore invalid. This provision, it is true, is severable, and its invalidity would not affect the rest of the act. But, as the bonds here in question are made payable at the Chemical National Bank in New York city, and as the ordinance authorizing them provides that they shall be so payable, it is necessary to examine that objection.

The sections of the constitution referred to were construed in *Yarnell* v. *Los Angeles*, 87 Cal. 603; and it was there held that the provision in the charter of that city authorizing the council to appoint a bank in that city,

as a depositary of the public funds, was a violation of those sections, and wholly invalid. We are unable to distinguish that case from the present one, and we think the reasoning there employed applies with at least equal force to this case. If the principal and interest of these bonds is to be paid at a bank in the city of New York, that thing can be accomplished only in one of two ways: Either the city treasurer must go, in person, to New York, carrying the money with him, and there pay it out, or he must remit the money by express, draft, or some other mode to that bank, and authorize that bank to make the payment. There is no law which authorizes the city treasurer to go to New York (in the present case semi-annually), and take with him the public moneys; and, in the absence of such a law, he certainly has no such power. Even if it be conceded (which is not clear) that the legislature is competent to authorize any officer to perform any part of his duties without the state, it has not attempted to confer any such authority in this instance; and there is, therefore, no other alternative than to remit the money to the bank in New York, and make that bank the agent of the city to pay the bonds and coupons. But this is precisely what is forbidden by the constitution, and is, as we regard it, a graver infraction of its provisions than that considered in *Yarnell* v. *Los Angeles, supra.* We are therefore of opinion that the bonds in question, and the ordinance authorizing them, are clearly invalid, and that the defendant cannot be required to sign them.

This conclusion renders it unnecessary to consider the effect of the amendment of 1895 (Stats. 1895, p. 203) to section 1 of the act of 1893. The questions arising under that act are important, and have not been adequately presented by counsel; and we therefore leave them for consideration in some case in which they are properly involved.

The demurrer to the petition is, for the reasons suggested, sustained, and the writ dismissed.

McFarland, J., Garoutte, J., Temple, J., and Henshaw, J., concurred.

Harrison, J., concurring.—I concur in the judgment, and also in that portion of the opinion of Mr. Justice Van Fleet in which he discusses the effect of the provision in the ordinance making the interest upon the bonds payable out of the state.

I am of the opinion, however, that the recitals in the ordinance respecting the bonds which are to be refunded sufficiently show that a portion thereof were issued prior to the year 1880, and another portion subsequent to that year. It is unnecessary, therefore, to determine whether section 4445 of the Political Code is still in force, as that section by its terms authorizes the issue of bonds for the sole purpose of refunding an indebtedness which existed on the first day of January, 1880, while the bonds sought to be issued by the proceedings under consideration are for the purpose of refunding an indebtedness of which the greater portion did not exist at that date.

The act of 1883, as amended in 1893 (Stats. 1893, p. 59), and under which the proceedings were had, was again amended in 1895. (Stats. 1895, p. 203.) The effect of this amendment was to deprive the city council of all power to issue refunding bonds, except in accordance with its terms; and the latter act is the sole authority by which to determine the power of a municipality to issue any refunding bonds, as well as the mode in which that power is to be exercised. This act was adopted March 27, 1895, and took effect immediately, and, although the election by the voters of Los Angeles was held March 21, 1895, the vote was not canvassed until April 1st, and the ordinance for the issue of the bonds was not adopted until April 8th. As no contract had been entered into, and no vested right had accrued by reason of the steps that had been taken for the issuance of these bonds, the effect of the act of 1895 was to repeal all the provisions for their issuance that were not pre-

served in the amended act, and to render nugatory all the steps that had been taken by virtue of those provisions. (*Lamb* v. *Schottler*, 54 Cal. 319.) Under the act, as thus amended, no election by the voters is required as a preliminary step, but the governing power of the city is empowered to refund the outstanding indebtedness, and issue bonds therefor, "by a vote of four-fifths of its members." The validity of the election is, therefore, not involved, and as the act confers no authority to sell the bonds when issued, except in special instances, there can be no additional liability created by the mere issue of the bonds.

To entitle the petitioner to the writ of mandate against the respondent, it was necessary to set forth in its petition all the facts which rendered it his duty to sign the bonds. This duty did not exist unless the ordinance for their issuance had been adopted by a vote of four-fifths of the members of the city council, and the petition should have so stated. As the adoption of an ordinance for the issuance of bonds would not give any validity to the bonds, or authorize their issuance, unless the ordinance was adopted by the requisite vote, the mere averment that the city council "adopted an ordinance providing for the issuance of said bonds," does not sufficiently show that the ordinance was passed in accordance with the requirements of the statute, or that it was incumbent upon the respondent to sign the same.

Rehearing denied.