Filed 6/25/24  City of Escondido v. Fawcett CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CITY OF ESCONDIDO, | D082525 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2022-00025425-CU-PT-NC) |
| JANE FAWCETT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Howard Jarvis Taxpayers Foundation, Jonathan M. Coupal, Timothy A. Bittle, and Laura E. Dougherty for Defendant and Appellant.

Stradling Yocca Carlson & Rauth, Allison E. Burns, Brian P. Forbath, and Gregory J. Maestri for Plaintiff and Respondent.

This is a dispute over the validity of a resolution by the City of Escondido's City Council authorizing an issuance of bonds to cover the City's unfunded pension liability.  Jane Fawcett, a City taxpayer, answered the City's validation complaint and contended the bonds would violate California's constitutional debt limitation, which prohibits a city from

"incur[ring] any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds" of voters. (Cal. Const., art. XVI, § 18, subd. (a).) Fawcett appeals the validation judgment. *City of San José v. Howard Jarvis Taxpayers Assn.* (2024) 101 Cal.App.5th 777 (*San José*) recently resolved a similar dispute. We find *San José*'s reasoning persuasive to conclude the debt limitation is inapplicable and thus affirm.

## I.

In 1958, the Council contracted with the predecessor of the California Public Employees Retirement System (CalPERS) Board of Administration to provide retirement benefits, including pensions, to City employees. Under both the contract as amended and the Retirement Law (Gov. Code, §§ 20000 *et seq.*), the City must make regular "[n]ormal [c]ost" contributions, determined by actuarial valuations, to fund the retirement system. (See § 20532.)

CalPERS invests those contributions "with the goal of earning sufficient returns over the long-term to pay defined benefits as promised." If returns fall short of the City's "[a]ccrued [l]iability"—"[t]he total dollars needed as of the valuation date to fund all benefits earned in the past for *current* members"—an "unfunded liability" arises. The unfunded liability is "the City's debt owed to CalPERS," which presently charges the City interest at 6.8 percent. As of June 2020, the City's unfunded liability exceeded $267 million.

In 2022, the City began exploring options to manage its unfunded liability, and the Council passed a resolution authorizing the issuance of pension obligation bonds (POBs). The Council authorized an initial issuance with a principal amount of "the lesser of: (a) $350,000,000; or (b) the sum of

2

the City's [u]nfunded [l]iability and [c]urrent [o]bligation . . . together with the costs of issuing the" POBs, provided the issuance "results in net present value savings to the City." It also authorized the issuance of further POBs on substantially the same terms if needed to pay any future unfunded liability.

The City sought a declaration that issuing the POBs was "exempt from and not subject to" the constitutional debt limitation. Fawcett answered, challenging the POBs' validity. Following extensive briefing, a hearing, augmentation of the record, and further briefing, the trial court granted the City's motion for judgment. The court found the City's pension obligation involuntary under its contract and the Retirement Law and concluded "voter approval is not required . . . because the issuance of bonds to refinance the [u]nfunded [l]iability is not a new debt, but merely a refinancing of an existing debt." Additionally, the POBs could only issue if they would result in savings to the City. The court found that the City investigated options and "exercised its discretion in determining to issue bonds," reasoned it was not the court's role to substitute its judgment for the Council's, and was "satisfied" the City "complied with existing law in exercising its judgment."

II.

In this validation action appeal, we review the administrative record to determine whether there is substantial evidence to support the trial court's findings. (*Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1479.) Meanwhile, "[w]e review questions of constitutional and statutory interpretation," including "the applicability of article XVI, section 18 to the challenged resolution," de novo. (*San José, supra*, 101 Cal.App.5th at p. 794.)

Fawcett contends the City's unfunded liability is not existing debt, so the proposed POBs are not, as the City claims, "refunding bonds" that

3

recharacterize existing indebtedness; rather, they are newly incurred debt violating the debt limitation.[1]  She claims the proposed POBs do not fall within the "obligation imposed by law" exception both for that reason and because the City voluntarily entered into the CalPERS contract and pension program.

In so arguing, Fawcett claims *County of Orange v. Association of Orange County Deputy Sheriffs* (2011) 192 Cal.App.4th 21 (*Orange*) is "directly on point."  After briefing was complete in this matter, however, the City filed a letter pursuant to Rule 8.254 of the California Rules of Court disclosing the newly issued opinion in *San José*.  We requested supplemental briefing on the impact, if any, of that decision on this appeal.

A.

In *Orange*, the county's board of directors approved an increase in pension benefits, but later "had a change of heart" given its "difficult financial situation."  (*Orange, supra*, 192 Cal.App.4th at pp. 29-31, 39.)  The county filed an action against the retirement board, seeking a declaration the benefit increase was unconstitutional because, "without voter approval, the resolution created an immediately incurred and legally enforceable debt" that "exceeded the County's available unappropriated funds for the year."  (*Id.* at p. 31.)  The court of appeal, however, affirmed the trial court's judgment in favor of the board.  (*Id.* at p. 28.)  Relying on the then-existing standards of

---

[1]     When asked at oral argument whether her challenge to the City's proposed POBs includes not only the unfunded liability but also the inclusion of the City's normal cost and the costs of bond issuance within the principal amount, Fawcett said she challenged the full sum.  However, when asked where in her opening brief she advances a challenge to these additional items, she had no response.  Thus, whether and to what extent those costs may constitute new debt that could violate the constitutional debt limit is not before us.

4

the Government Accounting Standards Board (GASB), the court of appeal concluded that the unfunded liability created by the increase was not a liability for purposes of the debt limit, as it was not reportable as such on the county's balance sheet. (*Id.* at p. 39.) Given the lack of "clear case authority," the court afforded great weight to a 1982 Attorney General opinion concluding that unfunded liability is not legally binding debt but rather a projection to determine contribution amounts. (*Id.* at pp. 36-37, citing 65 Ops.Cal.Atty.Gen. 571 (1982).)

In *San José*, on facts similar to those here, the court of appeal reached a different conclusion. (See generally *San José*, *supra*, 101 Cal.App.5th 777.) There, as here, the city made annual contributions to fund its employees' pensions, but an unfunded liability arose. (*Id.* at pp. 788-789.) The city passed a resolution authorizing the issuance of POBs in an amount "'not to exceed that required to refund . . . the [u]nfunded [l]iability,'" its current contribution, and bond costs, to issue only if savings to the city resulted. (*Id.* at p. 789.) The trial court concluded the issuance was an obligation imposed by law exempt from the debt limitation. (*Id.* at p. 790.)

The court of appeal affirmed, but on different reasoning. (*San José*, *supra*, 101 Cal.App.5th at pp. 787-788.) It rejected the challenger's arguments that (1) the unfunded liability was not debt because it was "not payable 'today'" and (2) the POBs were instead "*new* debt." (*Id.* at pp. 797-801.) It found the challenger's reliance on *Orange*, involving "materially different" facts, unpersuasive. (*Id.* at pp. 797-798.) The *San José* court explained that the court in *Orange* analyzed the legal significance of an increase in benefits and the resulting unfunded liability rather than the issuance of bonds "to provide an income stream for a liability [the city] has already incurred." (*Id.* at p. 798.) The *San José* court also noted that the

5

accounting standards at the time of *Orange* did not recognize unfunded pension liability on a city's balance sheet, whereas current GASB standards do. (*Id.* at p. 798 & fn. 11.) Invoking *Carman v. Alvord*, the court in *San José* concluded pension obligations are indebtedness. (*Id.* at p. 799, citing *Carman v. Alvord* (1982) 31 Cal.3d 318, 326-327 (*Carman*).) The POBs, which only would issue if savings would result, thus did not incur indebtedness under the debt limitation and required no voter approval. (*San José*, *supra*, at pp. 800-801.)

The court of appeal further concluded the city had authority to issue the bonds as "refunding bonds," defined as "bonds issued to refund bonds," under Government Code section 53583. (*San José*, *supra*, 101 Cal.App.5th at p. 806; Gov. Code, § 53580, subds. (a) & (c).) The meaning of "bonds" in this context incorporates two definitions. (§ 53580(b).) First, "bonds" is defined in relevant part as "bonds, warrants, notes[,] or other *evidence of indebtedness* of a" city. (§ 53550(b), italics added.) Second, "revenue bonds" is defined as "[b]onds, warrants, notes, or other *evidence of indebtedness* of a [city] payable from funds other than the proceeds of ad valorem taxes or the proceeds of assessments levied without limitation as to rate or amount by the [city] upon property in the" city. (§ 53570(b)(1), italics added.) "The proceeds of refunding bonds may be applied to the purchase, retirement at maturity, or redemption of the bonds to be refunded either at their earliest redemption date or dates, any subsequent redemption date or dates, upon their purchase or retirement maturity, or paid to a third person to assume the [city]'s obligation to make the payments." (§ 53584.)

The court in *San José* noted the city's authority to issue the POBs hinged on whether the unfunded liability was "evidence of indebtedness." (*San José*, *supra*, 101 Cal.App.5th at p. 801.) The court rejected the

6

challenger's reliance on Civil Code provisions defining a similar phrase, which by their own terms were inapplicable. (*Id.* at pp. 801-802.) It instead construed the phrase contextually, considering the definitions of the listed words preceding the term and a 1985 legislative amendment that broadened the definition of "revenue bonds." (*Id.* at pp. 803-805.) The court concluded "that the phrase . . . may include unfunded liability as it is understood here." (*Id.* at p. 805.) Thus, "[t]he refunding of the unfunded liability using the proceeds from the refunding bonds converts the debt represented by the unfunded liability into debt in the form of bonds" and "does not create new debt," as "'[a] bond is not indebtedness or liability—it is only the evidence or representative of an indebtedness,'" and "'a mere change in the form of the *evidence* of indebtedness'" cannot be "'new indebtedness within the meaning of the constitution.'" (*Id.* at p. 806, quoting *City of Los Angeles v. Teed* (1896) 112 Cal. 319, 327.)

B.

We find the reasoning of *San José* persuasive and are unswayed by Fawcett's attempts to distinguish it.

Fawcett primarily claims the unfunded liability "is not an enforceable debt in the present"; thus, the issuance of POBs "to pre-fund" that liability would create "new 'indebtedness.'" Yet, as *San José* explains, the City's pension liability is already incurred, as reflected on the City's 2021 Statement of Net Position, in accordance with current GASB standards. (*San José, supra,* 101 Cal.App.5th at pp. 799-801.) As the City contends, this is like a homeowner reporting "'a mortgage liability even if all monthly mortgage payments are paid on time, in full.'" We agree with the City that the facts that (1) the number may fluctuate and (2) the entire amount is not due and payable to CalPERS immediately, do not change the fundamental

7

nature of the unfunded liability as an extant liability. (§ 53551; *Carman*, *supra*, 31 Cal.3d 326-327.)

We disagree with Fawcett's claim that *San José* "provides inadequate reasoning for distinguishing" *Orange*. The court in *San José* concluded the new GASB standards severely undermined *Orange*, which relied significantly on GASB's treatment of unfunded liability at the time to conclude that liability was not "indebtedness" under the debt limit. (*San José*, *supra*, 101 Cal.App.5th at pp. 798 & fn. 11; *Orange*, *supra*, 192 Cal.App.4th at p. 39.) This conclusion does not depend, as Fawcett argues, on accepting that GASB standards "override California law" or overruling *San Diegans for Open Government v. City of San Diego* (2015) 242 Cal.App.4th 416, 439. *San José* merely found GASB standards persuasive, as did the court in *Orange*, in assessing the nature of the liability at issue. Nor do we agree with Fawcett that, in distinguishing *Orange*, *San José* "relied on the factually erroneous assumption" that the city's unfunded liability "involved no benefit increases." Rather, *San José* distinguished, rightfully, the disparate circumstances between a city seeking to issue bonds to refinance an obligation it already owes—as there and here—and a county looking to renege on a benefit increase by pointing to its unfunded liability in the abstract as violative of the debt limitation—as in *Orange*. (*San José*, at pp. 797-798.)

We, like the court in *San José*, thus find *Orange*, a decision characterizing the nature of unfunded liability under different facts and relying on outdated financial reporting standards and an Attorney General opinion, unpersuasive. *San José*, meanwhile, applies up-to-date accounting standards to a similar factual scenario. While we are not bound to follow it, we agree with the City that its treatment of the same issue on "nearly identical facts and law" is highly persuasive.

8

Because we conclude the unfunded liability is preexisting and previously accrued indebtedness, we are persuaded by the City's arguments and the analysis of *San José* that (1) the unfunded liability is "evidence of indebtedness" and (2) the City has the authority to issue its proposed POBs as "refunding bonds" in its place. (*San José*, *supra*, 101 Cal.App.5th at pp. 801-806.) Issuing POBs with a maturity date no later than CalPERS' amortization date for full payment of the unfunded liability that exchange bondholders in place of CalPERS as payees does not create new debt. We are unpersuaded by Fawcett's contrary arguments.

Fawcett claims the *San José* court's conclusion that the proposed POBs "'do not trigger the constitutional debt limitation'" is "unfounded." She further argues the court's purported failure to analyze whether the City of San José's unfunded liability is an "'obligation imposed by law'" makes the decision "deficient." We disagree. Like the challenger in *San José*, Fawcett's central argument is that the "unfunded liability is not an existing debt for purposes of article XVI, section 18," so the proposed POBs would create new debt of roughly $350 million that violates the debt limitation. (*San José*, *supra*, 101 Cal.App.5th at p. 791.) Because Fawcett at no point argues the unfunded liability *is* existing debt, she does not challenge the constitutional validity of the City's gradual incurrence of that pension obligation. Were that issue before us, the City's voluntary decision to enter into its CalPERS contract and provide pensions to its employees may be germane to the determination of whether the very incurrence of the unfunded liability violated the constitutional debt limitation. But that is not the case here. Instead, having rejected Fawcett's primary contention, the question is solely whether issuing refunding bonds that change the payee of that same unchallenged debt is permissible. *San José* correctly concluded the debt

9

limitation was inapplicable and the exceptions to the debt limitation were irrelevant to this issue.

To the extent *State ex rel. Pension Obligation Bond Com. v. All Persons Interested etc.* (2007) 152 Cal.App.4th 1386 (*State*) concludes otherwise, we agree with the City that it is distinguishable. *State* does not, as Fawcett claims, stand for the broad proposition that "[a] state POB requires voter approval" and thus "a local POB must also require voter approval." First, as the City notes, *State* assessed the validity of a state bond resolution under a *different* constitutional provision: Article XVI, section 1, which prohibits, subject to exceptions inapplicable here, the state from creating any debts or liabilities exceeding $300,000 without the vote of two-thirds of the Legislature and a majority of voters. (*State*, at p. 1397.) While Fawcett claims this court must construe the two provisions "'in tandem'" (*Orange, supra*, 192 Cal.App.4th at p. 35-36), "in tandem" does not mean "identically," but rather "in partnership or conjunction." (Merriam-Webster Dict. Online (2024) <https://www.merriam-webster.com/dictionary/tandem> [June 25, 2024], archived at <https://perma.cc/DHA8-RU5X>.) *State* itself declined to decide whether the "obligation imposed by law" exception to the debt limitation at issue here applied to the state provision, further underscoring the two provisions are not coextensive. (*State*, at p. 1401.) Relevantly, the state provision specifies a fixed number, while the debt limitation applicable to the City is a "balanced budget requirement" that prevents a city from deferring payment for a debt created in excess of the funds available in one year to future years. (*Id*. at p. 1398.)

We thus disagree with Fawcett's claims that (1) "*State* answered the exact question presented here" and (2) the "City's attempt to distinguish *State* on its facts is unavailing." Instead, we agree with the City that the

10

facts in *State* are materially different. In particular, Fawcett claims "it is notable" that in *State* the proposed POBs were to pay only a portion of the State's current fiscal year obligation. We agree this fact is notable, but for reasons different from Fawcett's. In *State*, by issuing bonds to fund a portion of a current obligation to "accelerate" anticipated savings resulting from a change in law, the state sought to create a new, long-term debt exceeding the constitutionally fixed ceiling. (*State, supra,* 152 Cal.App.4th at pp. 1395-1396.) Here, on the other hand, Fawcett challenges the conversion in full of a previously existing long-term debt that we have concluded creates no new debt. As noted by the City during oral argument, it already is making incremental payments on the unfunded liability, and it will continue to make incremental payments on that debt after the conversion. Given this crucial difference, *State* is unpersuasive.

While Fawcett claims differences of wording between the *San José* resolution and the one at issue here require in-depth analysis, we disagree. Fawcett points, for example, to the requirement in the *San José* resolution that the POBs "'result[ ] in savings to the City'" as opposed to the requirement here that they "'result[ ] in net present value savings to the City,'" but she makes no factual or legal argument as to how these minor differences are relevant, and we perceive no such reason in the record. During oral argument, the City contended its phrase was more stringent than that in *San José*, and Fawcett did not contest that assertion.

We find the various other "flaws" Fawcett identifies in *San José* uncompelling. For example, Fawcett claims the *San José* court's conclusion relies on the erroneous assumption the bond issuance would "*guarantee* taxpayer savings." But *San José* expressly acknowledged the possibility the market would not perform as projected such that the bonds could result in

11

the incurrence of additional debt.  (*San José*, *supra*, 101 Cal.App.5th at p. 800 & fn. 12.)  Here, prior to any issuance, the City will "evaluat[e] a full range of options" and determine, in consultation with an advisor and its financing team, that the issuance is likely to result in savings based on current market conditions and projections.  Fawcett's speculation as to whether the market could take a downturn and other "contingencies that may or may not happen . . . are not appropriate for consideration in this proceeding." (*County of Los Angeles v. Byram* (1951) 36 Cal.2d 694, 701.)  As the City aptly reminds us, its legislative determination as to how best to pay the liability it has already incurred is owed deference.  (See *San José*, *supra*, 101 Cal.App.5th at p. 800.)

In short, on the facts and arguments before us, we agree with *San José* that a resolution to issue refunding bonds that merely change the form of a preexisting liability to fund pension obligations does not violate the constitutional debt limitation.  (*San José*, *supra*, 101 Cal.App.5th at p. 806.) We also conclude the trial court's factual findings in support of the validation judgment are supported by substantial evidence.  We thus conclude the trial court properly granted the City's motion to enter validation judgment.

III.

We affirm.  The City of Escondido shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

CASTILLO, J.

WE CONCUR:


KELETY, Acting P. J.


RUBIN, J.

12