GRAVES v. JASPER SCHOOL TOWNSHIP OF HANSON COUNTY.

1.   A resident and tax payer of a sub-school district, who lives only one half mile from a legally located school house in said sub-district, and who has children of school age to send to school, and whose taxes will be materially increased by a removal of the school house two and one-half miles further from his residence, has such an individual interest in the subject matter, not common with all other residents and tax-payers of such sub-district, as gives him the right to invoke a court of equity to restrain the illegal acts of residents or of the township school board in such proposed removal.
2.   A school house having been located and built in accordance with law, can only be removed from that locality upon a vote of a majority of the electors of the subdistrict in which it is situated.   To make such a removal, or attempt to make it without that vote being taken and so declared, is without the solemn sanction of the electors, and is illegal and unlawful.

(Syllabus by the Court.   Opinion filed January 15, 1892.)

Appeal from circuit court, Hanson county.   Hon D. HANEY, Judge.

Action to enjoin and restrain defendant from moving a school building.   Plaintiff had judgment.   Defendant appealed. Affirmed.

The facts are fully stated in the opinion.

*F. B. Smith* for appellant.

Plaintiff cannot maintain this action for the reason that the facts show that he has no interest in the action, which is not in common with all resident free holders, tax payers and patrons

of this sub-district.     Doolittle v. Supervisors, 18 N. Y. 155; Wood v. Bangs, 1 Dak. 172; Sage v. Town of Fifield, 32 N. W. 629.

The school township board being a body of limited and defined powers all jurisdictional facts must affirmatively appear. Wight v. Warner, 1 Doug. 384; Galpin v. Page, 18 Wall. 350; State *ex rel.* v. Graham, 19 N. W. 359; Abb. Trial Ev. 546; U. S. v. Ross, 92 U. S. 281.

It will be presumed that the record of the school board kept by a sworn clerk, contains all the facts and proceeding of the board.     1 Dil. Mun. Corp. § 301; 38 Me. 164; Carrico *et al.* v. People *ex rel,* 14 N. E. 66; Report and Opinions of Att'y Gen. of S. Dak., p. 37.

If a petition was necessary the board could do nothing other than grant or refuse it.   The board had no power to create a new sub-district other than that petitioned for.   School District No. 1 v. School Dis. No. 4, 7 S. E. 285; Carrico *et al.* v. People *ex rel.,* 14 N. E. 66.

The school board has unlimited powers in the matter of discontinuing and changing the boundaries of sub-districts at all times.     § 1740 Comp. Laws; Morgan v. Welfley, 30 N. W. 606.

*R. M. Dott* for respondent.

The conclusions of law found by the court may all be erroneous, yet the rendition of the judgment be correct.   Kidd v. Teeple, 22 Cal. 255; Helm v. Dumars, 3 Cal. 454; Bleven v. Freer, 10 Cal. 172.

The plaintiff may resort to equity to prevent the defendant from acting *ultra vires* by which his burden of taxation is increased or an illegal tax imposed.   2 Dillon Municipal Corporations, § 914-922; Cramplon v. Labriskie, 101 U. S. 601; Newcomb v. Horton, 18 Wis. 594; 2 High on Inj. § 1560 and 1557; Treadway v. Schnanbel 1 Dak. 237; Peck v. School District No. 4, 21 Wis. 523.

Upon presentation of the petition the board acquired jurisdiction.   It was then within its province to determine the existence of the facts.   Dartmouth Savings Bank v. Sch. District

43 N. W. 823; The People v. Carpenter, 24 N. Y. 86;   Mere informalities in notice are not jurisdictional defects.   Parman v. Township School Inspectors, 49 Mich. 63.   The board having acquired jurisdiction, it will be presumed they rightfully exercised it.   Wight v. Warner, 1 Douglas, 384;   Woods Prac. Ev. § 77.   Acts of a corporation, which pre-suppose facts to make them legal, are presumptive proof of such facts.   Nelson v. Eaton, 26 N. Y. 410; Bank of U. S. v. Dandridge, 12 Wheat. 64; Buffalo R. R. Co. v. Buffalo, 5 Hill. 209.   The record of the board is *prima facie* evidence of the facts therein stated.   §§ 495–496, Code Civ. Proc.   The board has not the power to make and unmake districts and subdistricts at will.   Baldwin v. Nickerson, 19 Pac. 439. The act of the board in dissolving sub-district No. 5 is *ultra vires*, null and void.   Farmers and Merchants Nat'l B'k v. School District, 42 N. W. 767.

BENNETT, J.   This is an action by injunction for the purpose of enjoining and restraining the defendant from moving a certain frame school house.   Upon the hearing, the court found certain findings of fact and conclusions of law, and granted the injunction as prayed for.   To the granting of this injunction the appeal is taken.   The facts as found by the court below are admitted to be true.   Exceptions were taken to all the conclusions of law.   Numerous assignments of error are presented for our consideration.   The conclusions of law as found by the court, and the assignments of error by the appellant, raise but two questions for determination:   (1) Has the plaintiff such an interest in the subject-matter of the suit as enables him to maintain this action?   (2) Do the facts alleged in the complaint, admitted in the answer and found by the court, entitle him to the relief demanded?

As to the first question, the appellant insists that the plaintiff cannot maintain the action, for the facts show that has no interest in it which is not common with all resident freeholders, tax payers, and patrons of subdivision No. 2, even if subdistrict No. 5 exists.   His injury, if any, is no different from that of all others of that subdistrict.   The facts upon which plain-

tiff bases his right to maintain the action are, that he has resided on section 8, in subdistrict 2, continuously since 1880; that he owns and pays taxes on 400 acres of land in that district; that he lives one-half mile from the school house; that he has five children of school age, that a tax of two and one-half mills on the dollar was levied on his property to defray the expenses of moving the school house to its proposed site; that, should it be moved, his dwelling would be two and three-fourths miles from said school house. Are these facts sufficient for a resident and tax payer to invoke the powers of a court of equity to restrain the alleged proposed action of the school board of directors? Ordinarily, if officers of a public corporation are acting *ultra vires* or fraudulently, the corporation itself is the proper party to bring the suit, by appropriate action, to prevent the wrong; but if the corporation will not, or does not, bring such action, can it be said that our jurisprudence is so defective as to leave an injured person remediless, and require him to sustain a loss without effectual remedy? We think not. "In this county," says Judge Dillon in his work on Municipal Corporations, (Section 94.) "the right of property holders or taxable inhabitants to resort to equity to restrain municipal corporations or their officers from transcending their lawful powers, or violating their legal duties, in any mode which will injuriously affect the taxpayer, such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate property, * * * has without the aid of statute provisions to that effect been affirmed or recognized in numerous cases in many of the states. It is the prevailing, we may now add almost universal, doctrine on the subject. It can, we think, be vindicated upon principle, in view of the nature of the powers exercised by municipal corporations, and the necessity of affording easy, direct, and adequate preventive relief against their misuse. It is better that those immediately affected by corporate abuse should be armed with the power to interfere directly in their own names than to compel them to reply upon the action of a district state officer."

Mr. Justice FIELD, of the supreme court of the United States, in delivering the opinion of the court in the case of Crampton v. Zabriskie, 101 U. S. 601, says: "Of the right of resident tax payers to invoke the interposition of a court of equity to prevent an illegal dispositions of the moneys of the county, or the illegal creation of a debt which they, in common with other property holders of the county, may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases; and, from the nature of the powers exercised by municipal corporations, the great danger of their abuse, and the necessity of prompt action to prevent irremedial injuries, it would seem eminently proper for courts of equity to interfere, upon the application of the taxpayers of a county, to prevent the consummation of a wrong, when the officers of these corporations assume, in excess of their powers, to create burdens upon property holders. Certainly, in the absence of legislation restricting this right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual tax payers should not be entertained to prevent the misuse of corporate power. The courts may be safely trusted to prevent the abuse of their process in such cases." A large number of the leading authorities sustaining this position are collected in Dillon on Municipal Corporations, under Sections 914-920.

Even before the principles enunciated by the eminent jurists, above quoted, were announced, the elementary rule in equity pleading, that every person who is interested in the event of a suit or necessary to the relief must be made a party in order to enable the court to settle the rights of all, was dispensed with in numerous actions, when it was inconvenient, difficult, or impracticable, on account of the number or situation of the parties, to unite them in one action. Illustrations sustaining this departure are given by Judge Story in his work on Equity Pleading, (Sections 97, 98, 107, 124, 168, 285.)

In the case before us, it can hardly be said that the plaintiff has a joint and common interest with the balance of the

residents and tax payers of this sub-district. The facts show that his rights are separate and his interests distinct. In the alleged wrongful removal of the school house, the plaintiff claims a peculiar individual injury. He has now a school house one-half mile from his dwelling, in which his five children of school age can obtain an education, and attend the schools kept in it, without inconvenience to either them or himself. As a parent, he no doubt feels it his duty to educate his children to the extent of his ability, and it is to his personal advantage to have the facilities for doing so as near his house as possible. As a tax payer and property holder who contributed to the school fund to maintain and support the schools taught, he has an individual interest in the location of the school house. The complaint alleges, and the facts are admitted, that if it is moved, as contemplated, the plaintiff's children will be compelled to go two and three-fourths miles to attend school. This cannot but result in great inconvenience to them and expense to him. Again, his property will be taxed two and one-half mills on the dollar to raise funds to pay the expense of the removal. While the tax may be equally distributed upon all the property of the district, yet it cannot be said that all of the tax payers have a common interest in it, because the contemplated removal may be beneficial, instead of detrimental, to some, by placing the school house nearer to them. Such tax payers' interests would not be common with those who would be damaged by the removal. The presumption is that the school house was legally located on its present site by proper authority. Here it has remained for a long time. To take it away, unless done legally and lawfully, is an infringement of plaintiff's individual rights. The legality and lawfulness of the proposed act of the officers of the school township can be inquired into, upon the complaint of the plaintiff, in a court of equity.

Do the facts alleged in the complaint, admitted in the answer, and found by the court entitle the plaintiff to the relief demanded? The prayer of the complaint is "that the defendant be restrained from removing or attempting to remove said school house from its present site, or in any manner interfering

with its present location.'' This is the relief sought by the complaint. The allegations of the complaint, which are admitted by the answer, and also found by the court, are that ''about November 30, 1888, a large number of the residents of sub-district No. 5 proceeded to said school house in sub-district No. 2, and, by means of bars, timbers and teams, attempted to move said house from its foundation;    *    *    *    that they are now threatening and making efforts to so remove said house; and that the defendant, Jasper School Township, in support of said residents of sub-district No. 5, is about to take action and is making efforts and intends to unlawfully and illegally remove said house from its present location out of sub-district No. 2, and place it    *    *    *    in sub-district No. 5, without the consent or authority of the residents of sub-district No. 2, or of this plaintiff.'' The answer admits these facts, except that the intended removal of the school house is not from one sub-district into another. The issues raised by the complaint and answer are: (1) Were the township school board of Jasper School Township, together with the citizens of sub-district No. 5 of that township, intending and attempting to remove a school house illegally and unlawfully? (2) Was the attempted and intended removal of the school house from one sub-district into another? The answer of the first question in the affirmative precludes the necessity of considering the second, because. if the removal complained of was illegal and unlawful, there being no ''plain, speedy or adequate remedy at law,'' the plaintiff was entitled to the writ as prayed for. A school house, having been located and built in accordance with law, can only be removed from that location by competent authority. There is no express provision in the school law for the removal of a school house after it has been once located except upon a vote of a majority of the electors of the sub-district in which it is situated. Neither the complaint nor the answer shows that this has been taken. The answer admits that it is the intention to move the school house, but does not show or allege by what authority of law, or upon whose request, it is to be moved, nor does it attempt to justify their action on any other grounds,—

whether a vote of the sub-district has ever been taken on the question, or that its residents have ever been consulted in any manner upon the removal. The answer does not disclose the fact that the school township board has ever acted upon the matter at any regular meeting, or issued an order for the removal, but it admits that the "residents" are attempting to remove the house. The record shows that Jasper School Township was duly organized; that a township school board was elected; that the towship was divided into at least four sub-districts; that a school house was located and built in sub-district No. 2; that the location of the school house was made with a view to the convenience and advantage of the patrons of the school, near the center of the sub-district; and now, without any reasons shown, or that it would be for the interests of the sub-district in which it is situated that the house should be removed, it is attempted to be done. This action is not within the purview of the law. The legislature has created every organized school township into a distinct municipal corporation for school purposes. The school board of each township exercises its corporate powers. The board has charge and direction of its public schools and all school property, real and personal. It has power to purchase, sell, exchange, and hire school houses; to build, enlarge, alter, improve, and repair school houses upon sites or lots owned by school townships or sub-districts; it may join with tax payers of any sub-district for the erection or improvement of any school house; it can organize, locate and establish conveniently a sufficient number of schools, necessary for the education of all children of school age within the township, and to discontinue or change any of them according to law. Sub-districts laid off by the township board are not corporations or *quasi* corporations under the school law, but are the permissive instrumentalities or agencies through which the township school board can more effectually exercise its ministerial functions in relation to the school interests of the township. In view of this the legislature has required that each sub-district should be represented on the town school board by a director residing within its limits. It has

also given to these subdistricts the power to determine what branches of learning, in addition to those required by law, shall be taught in its schools; to direct the repairs on its school house and furniture; and, upon vote, to direct the removal of its school house to a more convenient location, or to direct the sale of the house and land, and to erect a new house, if desirable. The director of a subdistrict has the care and custody of the school house and school property of the subdistrict. It will thus be seen that while the residents of a subdistrict act in an advisory character with the township school board in some things, yet in others they have a controlling interest and power. The more intimate existing relations that residents of subdistricts have with the immediate school house and school of their district, and the consideration of the public welfare of the school, were, no doubt, the controlling motives in the legislature in dividing townships into subdistricts. School houses being one of the necessary adjuncts of good and efficient schools and they being of a permanent character, have not been permitted to be removed except upon a majority vote of the electors of the subdistrict in which they are located. It is not in the power of a township school board, or any number of citizens of a subdistrict, to make such a removal without that vote being taken and so declared; and any attempt to do so is without the solemn sanction of the electors, and is illegal and unlawful. The record in the case at bar showing no such vote as having been taken, the attempted removal is not warranted by law. It is unnecessary to review the action of the township school board in the alleged creation of subdistrict No. 5, or the effect of its alleged recission of its acts. The judgment of the court below is affirmed. All the judges concurring.