NATIONAL LIFE INSURANCE CO. OF MONTPELIER, VT., v. MEAD, Treasurer.

1. Laws 1890, Chap. 37, Art. 5, § 1, providing that a city council shall have power to borrow money on the city's credit for municipal purposes and issue bonds therefor, provided bonds shall not be issued except by authority of a majority vote of the electors in favor thereof, to be ascertained by an election, confers power on the council to issue bonds to fund the city's floating indebtedness, where the electors have voted therefor.

2. Certificates signed by the city mayor, auditor and attorney, stating what steps had been taken preliminary to the issuance of certain bonds and as to the financial condition of the city, and used by the person who negotiated the bonds, are inadmissible in an action thereon to predicate an estoppel, as against the city, from asserting that the bonds were in excess of the limit of the city's indebtedness, since the making of such a statement was not within the scope of the official duty of the officers making it.

3. A municipal bond recited that it was one of the series issued pursuant to Laws 1890, Chap. 37, providing that the municipality should not issue

bonds creating indebtedness exceeding in the aggregate a certain per cent. of its assessed valuation. The act also provided that the city auditor should keep books, which should at all times show the amount of the indebtedness of the city. The amount of the taxable property is shown by the asssessment roll for the preceding year, which is an accessible public record. *Held* that, though the recitals of the bond are in legal effect a representation that the indebtedness incurred thereby did not exceed the debt limit, the city is not thereby estopped to show that such bonds did create an indebtedness in excess of the debt limit, since a purchaser is bound to take notice of the existing indebtedness and the assessed valuation.

4. Bonds issued for the purpose of refunding existing indebtedness should not be considered in determining whether or not a city has reached or exceeded its constitutional debt limit, and, and hence bonds issued for that purpose, though the indebtedness in the aggregate exceeds the debt limit, are valid, as they do not create a new or additional debt.

(Opinion filed March 2, 1900.)

Appeal from circuit court, Hughes county. Hon. A. W. CAMPBELL, Judge.

Application by the National Life Insurance Company of Montpelier, Vermont, for a writ of mandamus against Corwin D. Mead, as treasurer of the city of Pierre, to compel the payment of certain interest coupons. From a judgment dismissing the application plaintiff appeals. Reversed.

*Horner & Stewart* for appellant.

In arriving at the amount of indebtedness of a city for the purpose of ascertaining the legal limits of indebtedness under Section 4 of Article 13 of the constitution of South Dakota the debt of the school district in which the city is located cannot be included even granting that their territorial limits are identical. Adams v. East River Sav. Inst. 65 Hun. 145; *Id* v. *Id*, 136 N. Y. 52; Todd v. City of Laurens, 26 S. E. 682; True

v. Davis County, 22 N. E. 410; Urnspear v. District Township, 37 Ia. 542; Carry v. District Township, 62 Ia. 102.

The issue of bonds of a city to fund and pay outstanding indebtedness is not such an increase of the indebtedness of the city as to entitle the city in a suit on the bonds or interest coupons attached to defeat the bonds by adding the amount of the bonds to the indebtedness they are issued to fund and this to the amount of the other indebtedness of the city in arriving at the limit of indebtedness of the city, where first the city alleges the outstanding indebtedness to be funded illegal and void and second the city's indebtedness is not in fact increased by the bond issue but the indebtedness is simply changed from a warrant to a bonded indebtedness. Dillon Mun. Corp. § 513; Natl. Life Ins. Co. v. Huron. 62 Fed. 783; City of Poughkeepsie v. Quintard, 136 N. Y. 275; Powell v. City of Maison, 8 N. E. 31; Miller v. School Dist., 39 Pac. 879; Hotchkiss v. Marion, 29 Pac. 821; Palmer v. City of Helena, 47 Pac. 209; Board of Comr's. v. Board, 26 Kan. 181; Opinion of Justices, 81 Me 602; Los Angeles v. Teed, 112 Col. 319; Board v. Platt 79 Fed. 567; Morris v. Taylor, 49 Pac. 660. Illegality of the indebtedness funded by these bonds, in view of their recitals will not defeat them in the hands of a *bona fide* purchaser for value. Brown v. Ingalls Twp., 81 Fed. 485; Board v. Huron, 80 Fed. 660; Codilloe v. Woonsocket Inst., 58 Fed. 939; Ins. Co. v. Board, 62 Fed. 785. The burden in any event was upon the defendant to show that the indebtedness funded by these bonds was illegal. Warrants issued in anticipation of revenues taxes to raise which have already been levied do not create an indebtedness. It therefor devolved upon defendant to show that the warrants funded by these bonds were nut anticipatory

warrants.   Shannon v. Huron, 69 N. W. 498; Western Town Lot Co. v. Lane, 7 S. D. 1.

Where a city assesses property and levies and· .collects taxes thereon for the express purpose of paying the interest upon bonds and providing a sinking fund for their ultimate payment and there are sufficient moneys in the hands of its treasurer received as the proceeds of these taxes to pay the in-terest the city treasurer in a suit to compel the turning over of these moneys in payment of this interest is estopped to deny the validity of the bonds and coupons.   § 3 Art. 8 Chap. 37 Laws 1890; § 2 Art. 10 Const. S. D; Liberty Twp. v. Hutchinson Co., 7 S. D. .530.

The recitals in the bonds estop the defendent to˙ deny the truth and existence of the facts therein recited.   Color v. Rhoda School Twp., 6 S. D. 640; Natl. Life Ins. Co. v. Board, 62 Fed. 783.

*Dillon & Sutherland*, for respondent.

A city organized under the general laws of the State of South Dakota has no power to issue bonds to fund outstanding indebtedness.   Subd. 5 Sec 1 Chap. 37 Laws 1890; People v. Dupugh, 71 Ill. 651; Railroad v. Trustees 78 Ill. 136; Barrett v. City of Denison, 145 U. S. 135; Ottawa v. Carey, 108 U. S. 121; Leep v. Railroad, 41 Am. St. Rep. 109; City of Brenham v. Bank, 144 U. S. 173; Hill v. Memphis, 134 U. S. 198.

The city is not estopped by the recitals in the bonds from showing that the bonds are in fact illegal and are issued in an amount in excess of the constitutional limit.   Recitals in municipal bonds cannot cover matters of law, they ˙can only extend to matters of fact which the municipal officers had authority to determine and certify.   District Township of

Doon v. Cummings, 142 U. S. 366; Sutliff v. Board Commissioners, 147 U. S. 230; Lake Co. v. Graham, 130 U. S. 674; Hedges v. Dixon Co., 150 U. S. 182; Lake Co. v. Rollins, 130 U. S. 662; Dixon Co. v. Field, 111 U. S. 83; Swan v. Arkansas City, 61 Fed. 478; Brown v. Bon Homme Co., 1 S. D. 216; Barrett v. City of Denison, 145 U. S. 135; Bank v. Town of Grenada, 54 Fed. 100; Shaw v. Independent School District of Riverside, 77 Fed. 277; Litchfield v. Ballou et al, 114, U. S. 190; Buchanan v. Litchfield, 102 U. S. 279; Flagg v. School District, 58 N. W. 504; Crow v. Oxford, I19 U. S. 215; Swan v. Arkansas City, 61 Fed. 478.

Bonds issued to take up and fund an existing indebtedness create a new indebtedness unless they do in fact decrease the indebtedness they were issued to fund. District Twp. v Cummins, 142 U. S. 366; State v. Common Council, 71 N. W. 86; Birkholz v. Dinnie, 72 N. W. 931.

The Pierre school district is an incident of the city of Pierre. Its indebtedness is a part of the indebtedness of the city and should be so considered in arriving at the constitutional limit of the city's indebtedness. Orvis v. Board, 56 N. W. 294; Kelley v. City of Minneapolis, 65 N. W. 115; State v. Power, 5 S. D. 627; City of Atchison v: DeKay, 148 U. S. 591.

HANEY, J. This proceeding was instituted to compel defendant, as treasurer of the city of Pierre, to pay certain interest coupons. A trial by the court, of the issues raised by an alternative writ of mandamus and answer, resulted in a judgment of dismissal, and the plaintiff appealed. October 1, 1890, the city, for value received, executed and delivered to various parties 200 funding bonds, each for $500, numbered consecu-

tively from 1 to 200, inclusive, with interest coupons attached, containing the following recitals: "This bond is one of a series of bonds, amounting to one hundred thousand dollars. issued for the purpose of funding the outstanding indebtedness of the city, in pursuance of the general incorporation laws of the State of South Dakota, approved March sixth, 1890, adopted by said city, and an ordinance of said city of Pierre entitled 'An ordinance to issue bonds for the purpose of funding and paying the outstanding indebtedness of the city of Pierre,' approved August fifth, 1890, and a vote of the electors in favor of issuing said bonds, by a morjority of the legal votes cast at a special election duly held in said city on the sixteenth day of September, 1890." October 1, 1891, the city, for value received, executed and delivered to various parties 300 funding bonds, each for $500, numbered consecutively from 1 to 300, inclusive, with interest coupons attached, containing the following recitals: "This bond is one of a series of bonds amounting to one hundred and fifty thousand dollars, issued for the purpose of funding and paying the outstanding indebtedness of the city, in pursuance of the general incorporation laws of the State of South Dakota and an ordinance of said city of Pierre entitled 'An ordinance to issue bonds for the purpose of funding and paying the outstanding indebtedness of the city of Pierre, South Dakota,' approved July twenty-eighth, 1891, and a vote of the electors in favor of issuing said bonds, by a majority of the legal votes cast at a special election duly held in said city on the eighth day of September, 1891." Plaintiff is the *bona fide* holder of coupons cut from bonds belonging to both issues. Collection is resisted on the ground that the city was without power to issue funding bonds, and that when

these were issued the city debt exceeded the constitutional limit. The statute referred to in the bonds gave the city council power: "To borrow money on the credit of the corporation for corporate purposes, and issue bonds therefor, in such amounts and forms, and on such conditions as it shall prescribe, but shall not become indebted in any manner or for any purpose to any amount including existing indebtedness, in the aggregate to exceed five (5) per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and before or at the time of incurring any indebtedness, shall provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years after contracting the same; provided, no bonds shall be issued by the said city council under the provisions of this act either for general or special purposes unless at an election after twenty days' notice in a newspaper published in the city, stating the purpose for which said bonds are to be issued and the amount thereof, the legal voters of said city by a majority shall be determined in favor of issuing said bonds." Laws 1890, Chap. 37, Art. 5, § 1. It will be observed that this law gives express power to borrow money by issuing bonds for corporate purposes. Did this confer power to issue bonds for the purpose of funding floating indebtedness? An affirmative answer to this inquiry is supported by the following decisions: Morris & Whitehead v. Taylor (Or.) 49 Pac. 660; City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272; Portland Sav. Bank v. City of Evansville (C. C.) 25 Fed. 389. The authorities cited by defendants counsel do not sustain a differ

ent view.    In City of Brenham v. German-American Bank, 144
U. S. 173, 12 Sup. Ct. 559, 36 L. Ed. 390, there was only ex-
press power to borrow for corporate purposes, and a majority
of the court held that power to issue negotiable bonds could
not be implied.    So in Hill v. Memphis, 134 U. S. 198, 10 Sup.
Ct. 562, 33 L. Ed. 887, express power to issue bonds was want-
ing, and the court decided that the power did not exist by im-
plication.    Here, however, the statute expressly makes the
power to issue bonds co-extensive with the power to borrow
money.    Either may be exercised for any corporate purpose;
and the payment of legal municipal debts is clearly a corporate
purpose.    If a city has power to borrow money by issuing
bonds for the purpose of lighting its streets, it clearly has
power to borrow money in the same manner to pay an indebted-
ness incurred for the same purpose.    Had the legislature con-
templated there would be no floating indebtedness under any
circumstances, cities would have been authorized to borrow
only for the purpose of.paying outstanding bonds.    We think
the city was authorized to issue bonds for the purpose of fund-
ing its indebtedness.

Evidence was received upon the trial tending to prove that
the person employed by the city to dispose of these bonds was
furnished with certain statements of fact, or certificates, con-
cerning its action preceding their execution, and its financial
condition at that time, signed by its mayor, auditor and attor-
ney.    This evidence was properly disregarded· by the trial
court in making its decision.    If such statements or certificates
were issued, the city would not be estopped from pleading an
indebtedness in excess of.the statutory or constitutional limi-
tation, because the execution of such certificates was without

the line of official duty and beyond the scope of official authority. The certificate of a public officer not authorized by law to make it has no more effect than that of a private person. Meyer v. School Dist., 4 S. D. 420, 57 N. W. 68. The distinction between bonds which contain no reference to the constitution, or any statement that the constitutional requirements were observed, and those which expressly recite that its limitation of indebtedness has not been passed, has been plainly pointed out by the United States supreme court. Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065; Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 104 . The bonds in this case contain no reference to the constitution, but they do recite that they are issued "in pursuance of"—that is, in accordance with—"the general incorporation laws approved March sixth, 1890," the limitations of which, as to indebtedness are as broad as the limitations of the constituion. Therefore the recitals are in legal effect equivalent to a representation, on the part of the city officers, that the indebtedness incurred, including that then existing, did not exceed the 5 per per centum prescribed by both the statute and constitution (Laws 1890, *supra*; Const. Art. 13, § 4; Buchanan v. Litchfield, 102 U. S. 278, 26 L. Ed. 138); and it becomes proper to determine to what extent the city is estopped by such recitals, as against a purchaser in good faith and for value. The rule is well settled that a purchaser of negotiable municipal bonds is held to know the constitutional and statutory provisions and restrictions bearing on the authority to issue them; also the recitals of the bonds he buys; while, on the other hand, if he act in good faith, and pay value, he is entitled to be protected by the recital of any fact the existence of which the officers

who executed them were authorized and required to ascertain and determine before issuing the bonds. Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360; Lake Co. v. Graham, *supra*; Sutliff v. Commissiouers, 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145; Board of Com'rs of Gunnison Co., Col., v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689. Applying this rule to the issue of 1890, the plaintiff, although a purchaser in good faith and for value, was bound to know that the city was without power to become indebted in any manner, or for any purpose, to any amount, including existing indebtedness, in the aggregate to exceed 5 per centum on the value of the taxable property therein; he was also bound to know from the recitals of each bond that the entire issue aggregated $100,000; and he was bound to know the value of taxable property in the city, as ascertained by the 1890 assessment. for state and county taxes. Dixon Co. v. Field, *supra*; Laws 1890, *supra*. The amount of bonds and the assessed value of taxable property being known, the ratio between the two is fixed by an arithmetical calculation, and the only remaining factor is the amount of existing indebtedness. Although the territorial boundaries of the city and school districts are coincident, the debts of the latter cannot be included in determining whether the debts of the former exceed the statutory or constitutional limit. Wilson v. Board, 12 S. D. 535, 81 N. W. 952. Five per centum on the value of the taxable property in the city was $161,144.40; therefore the bonds did not in themselves exceed the limit. Construing the bonds as in effect reciting that there was not sufficient existing indebtedness to make the aggregate exceed the limitation, the question arises whether defendant is estopped thereby from show-

ing the amount of actual existing indebtedness.    The number of cases involving the law of recitals in municipal bonds, which constantly reach the courts of last resort, both state and federal, indicate that the principles applicable to such paper have not, so far, been determined with satisfactory certainty.    An examination of the adjudications will show that one of the chief causes of contention has resulted from the failure or inability of the courts to clearly define the distinction between those facts of the existence of which a purchaser must take notice and those the existence of which is conclusively established by recitals.    The doctrine announced in Dixon Co. v. Field, *supra*, a leading case on the subject, has been frequently reaffirmed by the federal supreme court, and followed by state courts in numerous decisions.    It is not modified by Chaffee Co. v. Potter, *supra*, because in that case the statute in terms, gave to the commissioners the determination of the amount of indebtedness.    Board of Com'rs of Gunnison Co., Colo., v. E H. Rollins & Sons, *supra*.    In Sutliff v. Commissioners, *supra*, where the statute made it the duty of the county commissioners to publish and to cause to be entered on their records, open to the inspection of the public, semiannual statements exhibiting in detail the debts, expenditures, and receipts of the county for the preceding six months, and striking the balance, so as to show the amount of any deficit, and the balance in the treasury, the federal supreme court says:    "In those cases in which this court has held a municipal corporation to be estopped by recitals in its bonds to assert that they were issued in excess of the limit imposed by the constitution or statutes of the state, the statutes, as construed by the court, left it to the officers issuing the bonds to determine whether the facts existed which

constituted the statutory or constitutional condition precedent, and did not require those facts to be made a matter of public record. Marcy v. Oswego Tp., 92 U. S. 637, 23 L. Ed. 748; Humboldt Tp. v. Long, 92 U. S 642, 23 L. Ed. 752; Dixon Co. v. Field, 111 U. S. 83, 4 Sup Ct. 315, 28 L. Ed. 360; Lake Co. v. Graham, 130 U. S. 674, 682, 9 Sup. Ct. 654, 32 L. Ed. 1065; Chaffee Co. v. Potter, 142 U. S. 355, 363, 12 Sup. Ct. 216, 35 L. Ed. 1040. · But if the statute expressly requires those facts to be made a matter of public record, open to the inspection of every one, there can be no implication that it was intended to leave that matter to be determined and concluded. contrary to the facts so recorded, by the officers charged with the duty of issuing the bonds."

The statute under which the bonds in suit were issued provides that the city auditor shall keep regular books of account, in which he shall enter all indebtedness of the city, which shall at all times show the financial condition of the city, the amount of bonds, orders, certificates, or other evidences of indebtedness issued by the city council; the amount of all bonds, orders, certificates or other evidences of indebtedness which have been redeemed, and the amount of each outstanding; that he shall countersign all bonds, orders, or other evidences of indebtedness of the city, and keep accurate accounts thereof, stating to whom and for what purpose issued, and the amount thereof; that he shall report to the city council on the first days of March and September of each year the receipts and expenses and financial condition of the city, which report shall be published within 30 days thereafter in the official paper of the city, or such other paper as the council may direct; that the books so required to be kept shall be open to the inspection of all

parties interested.    Therefore, in the case at bar, as in Sutliff v. Commissioners, *supra*, there were two facts required by the statute to be entered on the public records of the city, of which all the world is bound to take notice, and as to which the city cannot be concluded by any recitals in the bonds, namely, the value of the taxable property and the amount of existing indebtedness.    As found by the trial court, the existing indebtedness on October 1, 1890, exclusive of school debt and bonds issued on that day, consisted of the following items:    Bonds issued September 1, 1885, $5,000; bonds issued June 1, 1889, $15,000; bonds issued July 1, 1889, $25,000; and warrants $178,-000,—aggregating $223,000.    But plaintiff contends that whereas, the bonds in suit were issued for the purpose of funding and paying existing indebtedness, no new or additional debt was incurred, and that therefore such bonds are valid.    Regarding the disposal of the 1890 bonds the court below finds that they were made, executed, and delivered to various parties, for value received, on the day they bear date.    As the burden of proof was upon defendant to show illegality, we should infer that they were exchanged for an equal amount of outstanding indebtedness, if such inference is required to sustain their validity; "delivery to various parties for value received" being entirely consistent with such a conclusion.    But, as it might appear upon a retrial that they were not disposed of in that manner, it is proper to consider the other and more frequent method of funding existing indebtedness. It has been held by the court of last record in Wyoming, Montana, California, Kansas, Maine, Indiana, New York, and perhaps other states, that, where bonds are sold for the purpose of applying the proceeds to the payment of pre-existing indebtedness,

13 S. D.—4

there is merely a change in the evidences of such indebtedness and no increase thereof. Miller v. School Dist. (Wyo.) 39 Pac. 879; Palmer v. City of Helena (Mont.) 47 Pac. 209; City of Los Angeles v. Teed, 112 Cal. 319, 44 Pac. 580; Board of Com'rs of Marion Co. v. Board of Com'rs of Harvey Co., 26 Kan. 181; Opinions of Justices, 81 Me.603, 18 Atl. 291; Powell v. City of Madison (Ind. Sup.) 8 N. E. 31; City of Poughkeepsie v. Quintard, 136 N. Y. 275, 32 N. E. 764. On the other hand, the supreme court of the United States distinguishes the two methods, and holds that, where the bonds are sold for the purpose of applying the proceeds there is an increase of indebtedness to the extent of the new issue. Justices BROWN, HARLAND, and BREWER dissenting. Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044. North Dakota follows this decision, while California expressly declines to do so, and the United States circuit court of appeals in the Eighth circuit says: "The distinction seems to be more nice than real, and, in view of the vigorous dissent recorded with the opinion, we may be permitted to ·doubt whether it will ever be made again." City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272; City of Los Angeles v. Teed, *supra*; Birkholz v. Dinnie (N. D.) 72 N. W. 931.

Doubtless the constitutional provision under discussion was designed to confine municipal indebtedness within prescribed limits, but it could hardly have been intended or expected to prevent embezzlement or misappropriation of public funds. In ascertaining its scope and purpose, courts are not required to assume that municipal officers are always, or even usually, dishonest. The contrary should be presumed. Where the proceeds of funding bonds are properly applied, the trans-

action may in form be a borrowing of money, but in substance it is not different from what it would be had there been an exchange of bonds for other evidences of debt. The contemplated purpose and actual result are the same. The municipal liability is not increased, but merely suffered to remain. City of Poughkeepsie v. Quintard, *supra.* The argument that the indebtedness is instantly increased by the delivery of funding bonds, unless an equal amount of outstanding obligations is thereby extinguished, is without force where, as in this jurisdiction, available resources or assets may be considered in determining when additional indebtedness is created.. *In re* State Warrants, 6 S. D. 518, 62 N. W. 101; Town-Lots Co. v. Lane, 7 S. D. 599, 65 N. W. 17. The delivery of funding bonds, when sold at par, operates as an exchange of paper promises to pay for an equal amount of money instantly available for the extinguishment of an equal amount of other promises to pay. Assuming that this money remains in the treasury until used for the purpose intended, there is no moment of time when the financial condition of the city is in any substantial manner affected. Notice to holders of matured obligations stops the running of interest, and the city, with the proceeds of its funding bonds on hand, is in as good position as it would be if in possession of the evidences of its paid obligations duly canceled. If the proceeds be misapplied, of course the debt will be increased, provided the bonds be held valid. May not the other method produce equally serious consequences? Should the officer authorized to exchange new for old bonds, disregarding his official duty, accept money instead of outstanding obligations, and should the bonds thus placed upon the market fall into the hands of *bona fide* purchasers, the city debt would be

increased or innocent parties made to suffer. Extravagant or corrupt officers may successfully employ either method to increase taxation or defraud *bona fide* creditors. Such creditors should never be made to suffer by reason of the misappropriation of funds actually received by officers of the municipality. The legitimate object of issuing funding bonds is to meet the demands of creditors entitled to payment, or to reduce the interest on fundable obligations. By the terms of such obligations the city may have a right to pay, but cannot compel an exchange for bonds bearing a less rate of interest, and where the constitutional limit has been reached or passed, if the exchange method only is permitted, a reduction of interest is impossible. Although the proposition is not free from difficulty, we are inclined to hold that the issuing of funding bonds should not be regarded as creating any new or additional indebtedness, within the meaning of the statutory or constitutional limitation applicable to this action. While the decision of this court in City of Mitchell v. Smith, 12 S. D. 241, 80 N. W. 1077, does not extend so far as we go in this case, the result reached therein is in harmony with the views now expressed, after a more careful and thorough examination of the questions involved. Assuming, as we must from the record in this case, that the city was owing legal, fundable debts to an amount in excess of the bonds issued October 1st, 1890, it having authority to issue such bonds for the purpose of funding such indebtedness, and the issuing of such bonds not having created any new or additional indebtedness, within the meaning of the statutory or constitutional limitation, the conclusion follows that such bonds are valid; and the defendant, having sufficient funds on hand collected for that purpose, should be commanded to pay the

amount due the plaintiff upon his coupons cut from the 1890 bonds. The bonds of 1891 contained substantially the same recitals, were issued under the same authority, and negotiated in the same manner as those of 1890. On October 1, 1891, five per centum on the value of taxable property within the city was $301,104.20. The indebtedness, exclusive of school debt, consisted of these items: Bonds issued September 1, 1885, $5,000; bonds issued June 1, 1889, $15,000; bonds issued July 1, 1890, $25,000; bonds issued October 1, 1890 (heretofore considered), $100,000; and warrants $212,128.48,—making a total indebtedness of $357,128.48. As the city had authority to fund its floating indebtedness, as it does not affirmatively appear that any of the outstanding warrants were illegal, as the amount of such warrants exceeded the amount of bonds issued on that day, and as the bonds then issued did not create any new or additional indebtedness, within the meaning of the statutory or constitutional limitation, it follows that such bonds are valid; and the defendant, having on hand sufficient funds collected by taxation for that purpose, should be commanded to pay the amount due plaintiff upon his coupons cut from such bonds. The judgment of the circuit court is reversed, and a new trial ordered.