## EWERT v. MALLERY, President, *et al.*

1. Under the authority given a board of education by Laws 1901, c. 113, subc. 11, § 18, when necessary for school sites or buildings, or to fund a bonded indebtedness, to borrow mouey and issue bonds therefor, and to sell the bonds at not less than par, it may refund an old debt by exchanging bonds at par for a greater amount of pre-existing bonds.

2. Laws 1901, c. 113, subc. 11, § 20, providing a school corporation shall not issue bonds in pursuance of the act for more than 3 per cent. of its assessed valuation, being intended to restrict the creation of debts, does not prevent its issuing bonds exceeding such per cent. of its present valuation to refund a greater amount of legal bonds, issued when its valuation was much greater.

3. A school corporation, having created a valid bonded indebtedness, may reduce it, the creditors acquiescing, by exchanging new bonds, without any special grant of legislative authority.

(Opinion filed Aug. 4, 1902.)

Appeal from circuit court, Hughes county. Hon. LORING E. GAFFY, Judge.

Action by Adolph Ewert against John E. Mallery, president of board of education of the city of Pierre, and others. Judgment for defendants. Plaintiff appeals. Affirmed.

*Chas. E. De Land* and *T. P. Estes,* for appellant.

*John Sutherland* and *Ivan W. Goodner,* for respondents.

HANEY, P. J. This is an action to enjoin the issuing of certain refunding bonds. The plaintiff appeals from a judgment of dismissal on the merits. There is no dispute regarding the facts. So far as necessary to an understanding of the legal propositions discussed, they are as follows: The plaintiff is a resident, taxpayer, and elector of the city of Pierre, in this state. The defendants are members and officers of the board of education of the city of Pierre. Such board of education is now, and was at all the times mentioned herein, a public school corporation created by and existing under the laws of this state. On the 29th day of April, 1902, and when this action was commenced, the indebtedness of the board of education, as shown by its records, was as follows: Bonds issued October 1, 1889, $10,000; bonds issued July 1, 1889, $18,000; bonds issued September 20, 1890, $50,000; and bonds issued November 1, 1891, $100,000,—all of which bonds bear interest at 6 or 7 per cent. per annum. The past-due interest upon such bonded indebtedness is about $74,750. None of such indebtedness has been paid, and the whole thereof is still outstanding, as shown by the records of the board of education. The total assessment of all taxable property within the limits of the city of Pierre and within the territory of the school corporation, as returned and equalized for the year 1901, is $864,-340. The outstanding bonds now proposed to be refunded were all issued within the constitutional and statutory limitations upon the power of the board of education to create indebtedness. The total assessed valuation of all taxable property within the city of Pierre for the year 1888 was $622,499; for the year 1889, $991,869; for the year 1890, $3,169,173; for the year 1891, $6,022,084. At a meeting of the board of educa-

tion duly and regularly held in the city of Pierre on April 9, 1902, the board, by a unanimous vote of its members, resolved that the bonds of the board be issued in the aggregate sum of $125,000 for the purpose of refunding the bonded indebtedness of the board due or to become due; that such bonds should bear date May 1, 1902, to be due and payable 20 years from their date, and bear interest at the rate of 2 per cent. per annum for the first three years and 3 per cent. per annum thereafter, payable semi-annually on the 1st days of May and November in each year; provided, however, that the question of the issuance of such bonds should be first submitted to the vote of the people at an election to be called and held for that purpose, and a majority of the qualified electors of the corporation should at such election declare by their votes in favor of issuing the bonds. It was further resolved that the mayor of the city of Pierre be requested to call an election for the purpose of taking the sense of the corporation upon the question of issuing the bonds. Thereafter the mayor was duly requested in writing to call such election. The election having been duly called, properly conducted, and the vote canvassed, it appeared that 226 votes were cast in favor of issuing the bonds and 3 votes were cast against issuing them. In pursuance of the resolution of the board and the election so held, defendants propose and intend to issue funding bonds of the board in the sum of $125,000 for the purpose of exchanging the same for the outstanding bonded indebtedness of the board heretofore referred to; the new bonds to bear date May 1, 1902, to be due 20 years from that date, and to draw interest at the rate of 2 per cent. per annum during the first three years and 3 per cent. per annum thereafter until maturity; the bonds to be is-

sued in denominations of not less than $50 nor more than $1,000 each and to be exchanged at not less than par value for an equal or greater amount of outstanding bonds of the board of education. It is the intention of the board, by and through its members and officers, to issue no more of these bonds than shall be necessary to take up and retire all outstanding bonds aggregating the proximate sum of $252,750 by and through the exchange of refunding bonds aggregating not to exceed $125,-000. The proposed exchange of bonds will not result to the damage or injury of plaintiff or any taxpayer of the city of Pierre, but, on the contrary, will be greatly to the advantage of plaintiff and every other taxpayer of the city of Pierre; and by the terms agreed upon for the exchange of bonds the amount of the principal of the outstanding bonded indebtedness will be greatly lessened and reduced, the amount and rate of interest thereon will be reduced from not less than 6 per cent. per annum to 2 per cent. per annum for the first three years and 3 per cent. thereafter until the maturity of the proposed refunding bonds, and the burden of taxation will, as a consequence, be greatly relieved to plaintiff and all other taxpayers during the full term of the life of such bonds. The board of education and its officers and members are now proceeding, under and pursuant to the resolutions and proceedings heretofore mentioned and the election held thereon, to issue the aforesaid refunding bonds in accordance with the provisions of sections 18 to 25, both inclusive, of subchapter 11 of chapter 113, Laws of 1901, entitled "An act to establish a uniform system of education for the state of South Dakota and to repeal certain legislation relating thereto," approved March 5, 1901, and not otherwise; and it is the intention of the board, of its

president, and of all the officers and members thereof, at or before the issuance of such proposed bonds, to provide for the levy of an annual tax sufficient to pay the interest and principal thereof when due, as provided by law.   That a resident taxpayer has the right to maintain an action for the purpose of enjoining the issuing of illegal municipal bonds is no longer a disputable proposition in this jurisdiction.   Graves v. School Tp. 2 S. D. 414, 50 N. W. 904.   It is contended that the bonds involved in this action are illegal, because it is proposed to exchange them for outstanding legal obligations, in place of selling them, and applying the proceeds in payment of such obligations.   The statute under which defendants are acting contains these provisions:   ''Whenever it shall become necessary in order to raise sufficient funds for the purpose of a school site or sites, to erect suitable building or buildings thereon, or to fund a bonded indebtedness, it shall be lawful for the board of education of every corporation coming under the provisions of this act to borrow money, for which they are hereby authorized and empowered to issue bonds bearing a rate of interest not exceeding seven per cent. per annum payable annually or semi-annually, at such places as may be mentioned upon the face of said bond, which bonds shall be payable in not more than twenty years from their date; and the board of education is hereby authorized and empowered to sell such bonds at not less than par.   Provided, that no bonds shall be issued until the question shall be submitted to the people and a majority of the qualified electors who shall vote on the question at an election called for that purpose shall have declared by their votes in favor of issuing such bonds.''   Laws 1901, c. 113, subc. 11, §18.   This legislation recognizes the

need of school sites, buildings, and the refunding of bonded indebtedness. It was intended to provide means of attaining each of these objects. Therefore authority is given to borrow money; to issue bonds bearing a rate of interest not exceeding 7 per cent.; to sell bonds at not less than par. It is conceded that the board might sell bonds and use the money to buy a school site, to erect a school building, or to pay a legal outstanding bond. The object 'to be attained in this instance is the payment or extinguishment of legal outstanding obligations. The means provided and authorized by the legislature for attaining this object is the issuing of bonds. What substantial difference is there between exchanging bonds of the par value of $125,000 for outstanding obligations amounting to $252,750, and selling them at par for the purpose of paying the old debt? The transaction in either case is in substance the same. The contemplated purpose and result are the same, Insurance Co. v. Mead, 13 S. D. 37, 82 N. W. 78, 48 L. R. A. 785, 79 Am. St. Rep. 876. Either method of procedure results in refunding the old debt by issuing new bonds. We cannot conclude that these proposed bonds are void because they are to be exchanged, instead of being sold.

It is next argued that the bonds are unauthorized by the statute under which they are sought to be issued. It contains this provision: "But no corporation shall issue bonds in pursuance of this act in any sum greater than three per cent. of its assessed valuation." Laws 1901, c. 113, subc. 11, § 20. The amount of the proposed issue greatly exceeds 3 per cent. of the assessed valuation of the corporation in 1901. It is beyond question the duty of courts in construing statutes to give effect to the intent of the lawmaking power, and to seek for that in-

tent in every legitimate way. The object sought to be accomplished should exercise a potent influence in determining the meaning of not only the principal, but also the minor, provisions of the statute. If a statute is valid, it is to have effect according to the purpose and intent of the legislature. The intent is the vital part, the essence of the law. There can be no doubt as to the purpose of the last-quoted provision. It was intended to prevent excessive corporate indebtedness, and thus guard taxpayers against the extravagance of unwise and improvident public officers. The necessity of such legislation is shown by the history of the territory and of the earlier years of the state. Notwithstanding the provision was clearly intended to restrict the amount of corporate indebtedness, appellant insists that it should be so applied in this action as to prevent a substantial reduction of the principal and interest rate of the school board's legal debt. It is impossible to believe that the legislature intended this provision to prevent a school corporation from reducing a lawful debt of $252,750, bearing interest at 6 or 7 per cent. to one of $125,000, bearing interest at 2 and 3 per cent. No statute should be so construed as to produce precisely the opposite result to that intended by the lawmaking power. Bonds are but evidences of debt. The issuing of bonds is merely an incident to the creation of debts. Paper promises to pay may be issued without any valid obligations being created. Frequently, however, in disregard of these distinctions, bonds are spoken of and written about as if they were themselves the debts they represent. Thus, we think, in framing this statute it was assumed that issuing bonds is synonymous with creating debts. Looking, then beyond, the phraseology of the provision to the intent, to

the law itself, we conclude that it prohibits the creation of debts under the act in any sum greater than 3 per cent. of the corporation's assessed valuation.    And as refunding bonds either sold or exchanged do not create any new or additional indebtedness,  the proposed bonds are not invalid, though issued in a sum greater than 3 per cent. of the corporation's assessed valuation in the preceding or any other year.    Hyde v. Ewert, 16 S. D. 133, 91 N. W. 474; Insurance Co. v. Mead, supra; City of Mitchell v. Smith, 12 S. D. 241, 80 N. W. 1077.

The contention that because the board of education did not declare its assent to calling the election to ascertain whether a mere majority of electors voting at the election were in favor of the bonds, such election does not warrant the proposed issue, is clearly untenable.    In the first place, there is nothing in the record to justify the inference that a majority of all the electors in the corporation did not vote in favor of the bonds.    Furthermore, as the law merely requires the assent of a majority of the qualified electors voting on the question, and the board subsequently acquiesced in and acted upon the decision of the electors, it cannot be assumed that the board intended to issue the bonds without the sanction of a majority of all the electors.    The question of issuing these bonds was submitted to the electors at a properly called and conducted election, at which the majority required by the statute was given in favor of their being issued.    There is no doubt of their validity so far as the action of the electors is concerned.

Finally, as was suggested in a similar case, decided at the present term, the board of education, having created a valid debt, may reduce the amount of it by payment, or the exchange of new bonds, without any special grant of legislative authority.

If it and its creditors consent to a reduction of its legal liabilities, no one can be heard to complain. Hyde v. Ewert, supra.

The judgment of the circuit court is affirmed.