## In Re OPINION OF THE JUDGES
### (287 N. W. 581.)
(File No. 8328. Opinion filed September 8, 1939.)

To His Excellency, Harlan J. Bushfield,
Governor of South Dakota.

We have the honor of acknowledging the receipt of your communication addressed to the Judges of this Court which reads:

"Under the authority of Section 1, Article XIII, of the Constitution of South Dakota and the legislation enacted in pursuance thereof the State of South Dakota, through its Rural Credit Board,

has issued and there are now outstanding Rural Credit and Refunding Bonds (hereinafter referred to as Rural Credit Bonds) of the State in the amount of Thirty-six Million Eight Hundred Sixty-nine Thousand Dollars ($36,869,000), for the payment of the principal and interest of which the full faith and credit of the State of South Dakota are pledged. The bonds bear interest at various rates, ranging from two and three-fourths per centum (2¾%) per annum to six per centum (6%) per annum. The average maturity of the bonds is four years and eight months.

"Owing to the comparatively short term of the outstanding bonds the annual charge for the payment of the principal and interest of the debt is quite heavy, the debt service requirements for each year being as follows:

| Fiscal Year | Debt Service Requirements |
| --- | --- |
| 1939-40 | $5,302,540 |
| 1940-41 | 7,317,165 |
| 1941-42 | 3,680,595 |
| 1942-43 | 5,522,937.50 |
| 1943-44 | 3,017,280 |
| 1944-45 | 4,302,640 |
| 1945-46 | 3,176,500 |
| 1946-47 | 3,866,360 |
| 1947-48 | 2,764,530 |
| 1948-49 | 3,428,476 |
| 1949-50 | 1,960,500 |

"For a number of years the revenues of the Rural Credit Board have proven insufficient to provide for the payment of the principal and interest of outstanding bonds at maturity and it has been necessary for the State to make substantial appropriations of funds to provide for their payment and to issue refunding bonds to meet maturing installments of principal.

"Realizing the necessity for refunding a large portion of the debt and believing that now is a most favorable time to do it, the Rural Credit Board now has before it for final consideration a resolution authorizing the issuance of refunding bonds under the authority of SDC 55.3211 for the purpose of refunding the outstanding Rural Credit bonds, and has had submitted to it a contract employing a banking firm which specializes in the distribu-

tion of public securities to act as Refunding Agent of the Rural Credit Board. A copy of such proposed resolution of the Rural Credit Board is attached hereto, marked 'Exhibit A', and a copy of such proposed contract employing the Refunding Agent is also attached hereto, marked 'Exhibit B.'

"The outstanding bonds proposed to be refunded are not callable and are not presently due. In most instances the outstanding bonds have several years to run. It is the purpose of the Rural Credit Board, through the Refunding Agent, to offer to the holders of the outstanding bonds the privilege of exchanging such bonds for Refunding Bonds issued pursuant to the above mentioned Resolution.

"The consummation of the refunding program in the manner contemplated by the aforesaid Resolution and Refunding Contract will result in a very considerable reduction in the annual burden of servicing this indebtedness. Upon its completion the annual charge for the payment of the principal and interest of the bonds will be reduced to approximately Two Million Five Hundred Thousand Dollars ($2,500,000.00) for each year prior to and including the fiscal year of 1959-1960. The plan, therefore, if successfully carried out, will afford very considerable relief to the State and, in my judgment, is in the public interest.

"Certain questions are presented regarding the power of the Rural Credit Board to issue refunding bonds in the manner contemplated by the Resolution and to enter into the Refunding Contract. SDC 55.3211 authorizes the Rural Credit Board to issue refunding bonds. This Section, however, provides that: 'They shall bear such rate of interest as shall be fixed by the Board. All bonds shall be sold upon sealed bids, and no bond shall be sold for less than par and accrued interest.'

"The aforesaid Resolution authorizing the issuance of refunding bonds contemplates the delivery of such bonds in exchange par for par for the bonds proposed to be refunded. The outstanding bonds are divided into thirty-five (35) groups and provision is made for thirty-five (35) sub-series of the refunding bonds, each sub-series of refunding bonds to be exchangeable for the bonds of a specified group of outstanding bonds. The interest rates to be borne by the bonds of each sub-series have been fixed by the Rural Credit Board. In the first sub-series the bonds which

mature in the years 1950 to 1954, inclusive, will bear interest at the rate of two and three-quarters per centum (2¾%) per annum and bonds which mature in the years 1955 to 1959, inclusive, will bear interest at the rate of three per centum (3%) per annum. In the other sub-series the interest rates are definitely fixed, regardless of the maturities of the bonds of such sub-series. The holder of a Rural Credit Bond of any group is given the right to exchange such bond for a Refunding Bond of the appropriate sub-series, having such maturity as he may designate, so long as any bonds of that maturity are available. In the case of bonds in the first group, therefore, the interest rate to be borne by the Refunding Bond which may be issued in exchange for any bond of that group will depend upon the maturity of the Refunding Bond elected by the holder of the outstanding bond. In all other groups the interest rate will be the same, regardless of the maturity of the Refunding Bond which the creditor may elect to accept in exchange for his Rural Credit Bond.

"It is essential for the success of the Refunding Plan that there shall be no uncertainty in the minds of the holders of Rural Credit Bonds now outstanding as to the power of the Rural Credit Board to issue the Refunding Bonds in the manner contemplated, or as to the legality of the refunding bonds.

"The Refunding Bonds will pledge the full faith, credit and taxing power of the State of South Dakota for their payment, and the statutes require me to execute such bonds as Governor of the State of South Dakota. There is, therefore, presented to me, in the exercise of my powers as Governor and Chief Executive of this State, very grave and important questions of law, and before approving the proposed Refunding Resolution and executing the Refunding Bonds and in order that any and all questions as to the legality of such bonds and of the refunding contract entered into by the Rural Credit Board may be settled and adjudicated by the decision of this honorable Court, and in order that I may be advised as to my duties upon these grave and important questions of law involved in the exercise of my executive powers, may it please your Honors to prepare and submit to me your opinion upon the following questions:

"1. May the State, through the Rural Credit Board, issue Refunding Bonds which pledge the full faith, credit and taxing pow-

er of the State for their payment, in exchange for outstanding general obligations of the State heretofore issued through the Rural Credit Board?

"2. Does the Resolution now before the Rural Credit Board for final consideration, authorizing the issuance of such Refunding Bonds, fix the rate of interest to be borne by such bonds, as required by SDC 55.3211?

"3. Has the Rural Credit Board the power to employ a Refunding Agent and an Exchange Agent in the manner contemplated in the aforesaid Refunding Contract, to assist in bringing about exchanges of Refunding Bonds for the outstanding Rural Credit Bonds, and to pay the Refunding Agent and the Exchange Agent compensation for such services?

"4. Has the Rural Credit Board the power to subrogate the holders of the Refunding Bonds to all of the rights possessed by the holders of Rural Credit Bonds refunded, and to covenant on behalf of the State that all taxable property in the State, which was subject to taxation at the time the bonds refunded were issued, shall be subject to taxation for the payment of the principal and interest of the Refunding Bonds?

"The Attorney General has had the foregoing questions under consideration and should the Court desire he is willing and I have requested him to submit to the Court as amicus curiae a brief upon the legal questions involved."

The resolution which the Rural Credit Board has under consideration recites that the proposed plan for the refunding of outstanding rural credit indebtedness would reduce materially the annual maturities enabling the state to provide for the payment of principal and interest of the entire debt by making substantially equal annual appropriations therefor. The plan involves exchanges which are to be made voluntarily by bond holders and no question of the impairment of contracts or vested rights arises. Bonds of the state may be issued only upon the approval of the Governor, the Rural Credit Commissioner and the Attorney General. SDC 55.2601. As to the authority of the Rural Credit Board to exchange new or refunding bonds for outstanding Rural Credit bonds we deem the inquiry proper. The statutory approval under the section cited involves the exercise of an executive power.

The Rural Credit Board is an agency of the state exer-

cising powers and duties conferred upon it by the legislature. SDC 55.32. It is fundamental that this board cannot act beyond the limit of authority conferred upon it. Van v. Gunderson, 55 S. D. 95, 225 N. W. 54. The legislature has authorized the issuing of bonds for the purpose of refunding or retiring outstanding rural credit bonds. SDC 55.3211 reads in part as follows: "The Rural Credit Board shall have authority to issue and sell bonds for the purpose only of refunding or retiring present outstanding bonds, and for the further purpose of paying interest and taxes, and interest upon outstanding bonds, and for the purpose of reimbursing other state funds from which moneys have been used for the foregoing purposes; the aggregate amount of bonds and warrants issued and outstanding at any time shall not exceed forty-seven million dollars. Bonds herein provided for may be issued in denominations of twenty-five, fifty, one hundred, five hundred, and one thousand dollars, and in such other denominations as may be determined by the Board. They shall run for a specific period, or periods, not exceeding twenty years, and may be subject to such prior payments and retirement as the Board shall determine, in which case such option shall be expressed in the bonds. They shall have interest coupons attached, payable semiannually, and shall be issued in series of not less than twenty-five thousand dollars, the amount and terms to be fixed by the Board. They shall bear such rate of interest as shall be fixed by the Board. All bonds shall be sold upon sealed bids, and no bonds shall be sold for less than par and accrued interest. The Board may request bids for any such series on the basis of such bonds being all of one specified maturity, or of specified serial maturities, and with or without a specified option of prior payment in either case, or on any or all of said basis, and may determine the basis on which said bonds shall be issued at the time of acceptance of a bid or bids therefor, and the Board shall accept whichever of such bids it deems most favorable."

██ The legislature may, of course, authorize the funding of outstanding bonds either by direct exchange of refunding bonds for the outstanding obligation or by sale of the refunding bonds and the application of the proceeds in satisfaction of such obligation. The legislature has not in express words included authority to exchange bonds and the problem presented is whether or not

it is the legislative intention that the refunding of outstanding bonds may be effected by an exchange. In applying the provisions of the constitution in limiting the power to incur debt, this Court in National Life Ins. Co. v. Mead, 13 S. D. 37, 82 N. W. 78, 48 L. R. A. 785, 79 Am. St. Rep. 876, expressed the view that the transaction of exchange is no different from the sale of new bonds at par and the application of cash received in satisfaction of outstanding bonds. Conceding that this decision is authority for the principle that a grant of statutory power to issue and sell refunding bonds is sufficiently broad to permit an exchange of such bonds for outstanding bonds, we think that it is not here determinative. The statute provides that "all bonds shall be sold upon sealed bids." This is a definite limitation upon the authority of the Board to dispose of refunding bonds and this limitation must be complied with and no other disposition of bonds can be made.

■ The statute provides that the "Board shall prescribe rules and regulations concerning the manner" in which bonds shall be sold. The provision requiring competitive bidding is also a limitation upon the exercise of such authority. The Board may not contravene the terms of the statute in prescribing rules and regulations concerning the manner in which bonds may be issued and disposed of and ignore this limitation.

The Attorney General in a brief submitted at our request cites Hyde v. Ewert, 16 S. D. 133, 91 N. W. 474, and Ewert v. Mallery, 16 S. D. 151, 91 N. W. 479, 481, in support of his contention that the Rural Credit Board may issue refunding bonds in exchange for outstanding bonds. We do not regard these decisions as being opposed to the views which we have stated. In the first case cited plaintiff sought to enjoin the exchanging of bonds by the city of Pierre. Under the provisions of the chapter 51, Laws 1899, cities were authorized either to issue and sell bonds and apply the proceeds to the payment of a bonded indebtedness or to issue and exchange new bonds for outstanding bonds. There is dictum in the opinion to the effect that where a municipal corporation has created a debt and issued bonds in evidence thereof the municipal corporation, like any other debtor, may enter into negotiations and cancel or exchange its bonds without legislative authority. The question whether general power to issue bonds in the first instance includes the power by necessary implication to refund bonds by sale or

exchange was not before the court in that case. We do not regard it as involved in your inquiry. We are not here dealing with either a general power to issue bonds, or to refund bonds. The statute under consideration deals specifically with refunding, and the manner in which refunding bonds shall be disposed of is not left to the discretion of the Rural Credit Board, but a definite limitation is imposed. Ewert v. Mallery, supra, was an action to enjoin the issuing and exchanging of refunding bonds by the board of education of the city of Pierre. In this case it was said: "It is conceded that the board might sell bonds and use the money to buy a school site, to erect a school building, or to pay a legal outstanding bond. The object to be attained in this instance is the payment or extinguishment of legal outstanding obligations. The means provided and authorized by the legislature for attaining this object is the issuing of bonds. What substantial difference is there between exchanging bonds of the par value of $125,000 for outstanding obligations amounting to $252,750, and selling them at par for the purpose of paying the old debt? The transaction in either case is in substance the same." In other words, the exchange of bonds was sustained as a substantial equivalent to a sale and application of the proceeds. There was no transgression of statutory power. The statute conferred upon boards of education broad discretion with respect to the disposal of bonds and did not require the bonds to be sold pursuant to competitive bidding. The Rural Credit Board under the statute above quoted has no other alternative than to sell upon sealed bids. This clearly negatives an intention that bonds may be exchanged.

Having reached this conclusion, it is not necessary to discuss the applicability of the provisions of SDC 55.2602, or to consider other inquiries submitted.

Respectfully submitted,

FREDERICK A. WARREN,
Presiding Judge.

SAMUEL C. POLLEY,
E. D. ROBERTS,
HERBERT B. RUDOLPH,
ST. CLAIR SMITH,
Judges.